[Crim. No. 12829. Third Dist. Mar. 18, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CLYDE DEAN GORDON, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Christine Zilius, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Nancy Sweet and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SPARKS, J.—In this appeal we consider a host of questions arising from the now familiar case in which the evidence establishes more crimes than were charged. Here defendant Clyde D. Gordon was convicted of one count of sodomy with a person under 16 years of age by a person over the age of 21 (Pen. Code, § 286, subd. (b)(2)), and three counts of lewd and lascivious conduct with a child under 14 years of age (Pen. Code, § 288, subd. (a)). Sentenced to state prison for concurrent terms of five years on each of the four felonies, he appeals. On appeal defendant contends: (1) the sodomy count was barred by the statute of limitations; (2) as to the sodomy count and one count of lewd and lascivious conduct, the prosecution did not elect which acts it was relying upon to convict and, further, as to the sodomy count, the trial court failed to instruct on its own motion that the jury must unanimously agree on the specific act forming the basis of the verdict; (3) as to the sodomy count and one count of lewd and lascivious conduct, instructing the jury with CALJIC No. 4.71 constituted prejudicial error; (4) the sodomy conviction barred a concomitant conviction for a lewd and lascivious act potentially based on the same act; (5) defendant was denied effective assistance of counsel based on his attorney's failure to force the prosecution to elect specific acts, to object to introduction of evidence of uncharged sex offenses, and to request limiting instructions; and (6) the trial court erred in failing to instruct, again on its own motion, on appropriate lesser included offenses. We shall reverse the sodomy conviction and affirm the remainder of the judgment.

STATEMENT OF THE CASE

By an amended information filed on February 17, 1983, defendant was charged with five felony counts: one count charged sodomy on a female child under the age of 16, alleged to have occurred from on or about January 1, 1979, through November 30, 1980 (Pen. Code, § 286, subd. (b)(2),

count I);[1] and the remaining four counts charged lewd and lascivious conduct with a child under the age of 14, alleged to have occurred from on or about June 28, 1978, through November 30, 1980 (count II), on or about December 1 through December 22, 1978 (count III), on or about December 22, 1978 (count IV), and on or about July 1 through August 30, 1979 (count V), respectively. (Pen. Code, § 288, subd. (a).)[2]

Following a jury trial, the jury returned verdicts finding defendant guilty of the sodomy charge (count I) and three counts of lewd and lascivious conduct (counts II through IV) and not guilty of one count of lewd and lascivious conduct (count V). Probation was denied and defendant was sentenced to state prison. Defendant filed a notice of appeal on the day he was sentenced.

Subsequently, the sentence was recalled pursuant to section 1170, subdivision (d), and defendant was resentenced to a total of five years: the upper term of three years on count I and the upper term of five years on counts

---

[1]This count was defectively pled in that it alleged that defendant was more than 10 years older than the victim rather than alleging that he was over 21 years of age. However, because no demurrer was filed, this defect was waived. (Pen. Code, § 1012.) Moreover, contrary to the pleading, the testimony established that an act of sodomy occurred at the earliest in the beginning of 1978 and at the latest on August 3, 1979. In 1978 and 1979 Penal Code section 286, subdivision (b)(2) provided: "Any person over the age of 21 years who participates in an act of sodomy with another person who is under 16 years of age shall be guilty of a felony." (Stats. 1977, ch. 490, § 1, p. 1613.) Sodomy at all relevant times was defined as "sexual conduct consisting of contact between the penis of one person and the anus of another person." (§ 286, subd. (a).) Some sexual penetration, however slight, is required to complete the crime of sodomy. (Pen. Code, § 287.)

Effective January 1, 1980, the phrase "Except as provided in Section 288" was added to this subsection. The effect of that amendment is explained in Comment, *Review of Selected 1979 California Legislation* (1980) 11 Pacific L.J. 259, 430. Because no act of sodomy occurred in 1980, that amendment has no effect on this case and we do not further consider it.

The record also irrefutably established that the victim of the sodomy charge was five or six years old when assaulted and that the defendant was over forty-seven years old. Given these facts, and given further the fact that he was charged with one count of lewd conduct on a child under 14 involving the same victim, it is inexplicable that defendant was not charged with sodomy of a person under 14 years old in violation of Penal Code section 286, subdivision (c).

[2]In 1978 Penal Code section 288, subdivision (a) read: "Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, four or five years." (Stats. 1976, ch. 1139, § 177, pp. 5110-5111, operative July 1, 1977.) Effective January 1, 1979, the punishment was increased to three, five or seven years. (Stats. 1978, ch. 579, § 17, p. 1984.) The punishment remained at that level until January 1, 1982, when the statute was once again amended to increase the punishment to its present level of three, six or eight years. (Stats. 1981, ch. 1064, § 1, p. 4093.)

Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

II, III and IV, all terms to be served concurrently. He was also given credit for time served and good time/work time. Defendant timely filed a second notice of appeal and the two appeals were consolidated by stipulation.

STATEMENT OF FACTS

A. *Counts I (Sodomy) and II (Lewd and Lascivious Conduct)*

Marla M., who was nine years old when she testified at trial, was living during the period in question in Little Valley, California with her mother Gloria Gordon, then Gloria Ruiz, and Robert Ruiz, her mother's husband. She was then five or six years old and in kindergarten and first grade. Defendant and his family moved to Little Valley in December 1977. Defendant, who was later to become Marla's stepgrandfather, and his wife Willa lived just up the street from Marla and they were paid to babysit Marla on a regular basis. Both he and his wife babysat Marla after school and on weekends. Defendant's sexual misconduct with Marla began at the earliest time in the beginning of 1978. Marla testified to general, unspecified instances as well as more specific instances when defendant sexually touched her when she lived in Little Valley.

The general instances were these: (1) When Marla rode with defendant in his pickup truck, defendant would make Marla sit next to him and would rub her thighs with his hand. (2) From kindergarten to about third grade, defendant touched Marla "lots of times;" "there's so many times he did it, I can't remember them all." These touchings were done in "different ways sometimes." (3) Defendant also touched Marla's bottom with his penis ("long thing") twice. (4) Defendant touched Marla's vagina (where she "pass[es] water") with his penis many times, at least more than five times.

Marla also recounted these specific instances: (1) When Marla was in either kindergarten or first grade, in 1978 to 1979, and while defendant and his wife were babysitting her, defendant took Marla into the tack room at his residence, took off her underpants and touched her vagina, chest, and "bottom" with his hands. Defendant also put his penis ("his long thing with the two round things") inside of her vagina. Marla thought Willa knew about the incident because Willa was just out in the garden when Marla yelled in protest. (2) On two other occasions defendant touched his penis to Marla's anus. On one occasion, date and place not specified, defendant tried to put his penis in her anus and she hollered and cried because it hurt. Defendant kept trying for a few minutes and then stopped. On the second occasion, Marla was camping with defendant and a man named Stan. Marla and defendant slept inside defendant's camper; Stan slept outside. One night defendant tried to put his penis inside her anus; it again hurt and Marla

cried and hollered. Defendant told Marla that if she told anyone he would hurt her mother. She was afraid defendant would carry out the threat.

Marla's mother, Gloria, testified as a prosecution witness. Gloria married defendant's son, Richard Gordon, on August 4, 1979. All the events described by Marla occurred before this date. Marla first told her mother about defendant's conduct in November or December of 1980 when Gloria asked Marla if she would like to stay with defendant and Willa while she and Richard went to look for work. Marla stated she would not like that. When pressed for her reasons, she told Gloria what had been happening. Gloria confronted defendant later that evening. According to Gloria, defendant neither admitted nor denied the accusation, but instead turned to Marla and asked "Why did you tell your momma?" The next day, Gloria told her neighbors Barbara Hitchcock and Melissa Turner that defendant had sexually abused Marla. She did not go to the police because her husband Richard told her that if she put his father in jail she better file for divorce. She did not want to break up her marriage. Gloria consequently did not report the incidents to the police until March 1982. Later Gloria went to Oregon to avoid being subpoenaed because defendant's wife was pressuring her and because Marla did not want to testify. At one point, Gloria wrote a letter to defendant trying to get him to give her ownership of his truck or $500 and threatening him with prosecution.

According to Gloria, prior to her trip to Oregon with Marla and after charges were filed, defendant told Gloria he did not hurt any other little girls and was sorry for what had happened to Marla. He stated he would get psychiatric help.

## B. *Counts III and IV (Lewd and Lascivious Conduct)*

Brandy W., who was eleven years old when she testified, was approximately seven years old when defendant and Willa babysat her and her brother. Approximately one week prior to December 22, 1978, the date of a friend's birthday party, Brandy was in defendant's backyard in Little Valley when defendant took her behind the barn during the daytime and stuck his hand down her pants and touched her vagina. Brandy was afraid and did not tell anyone what happened.

On another occasion, one night either two days before or after the other incident, Brandy accompanied defendant in his truck to get Willa a soda. Defendant turned off a private road (Skunk Hollow Road) in Little Valley, got out of the truck, opened the passenger door, told Brandy to lie down, pulled down her pants and touched or "stuck his penis in [her] vagina." Defendant told Brandy to tell Willa that they had just gone to a bar.

Brandy told her friend Candice about one or both incidents while she was at the party. Candice in turn told the mother of the child who was having the party. When Brandy was questioned by this woman, she remained silent. Brandy's mother, Barbara Hitchcock, was informed what happened the following day. Barbara initially did not call the police because it was "really hard to believe" and she thought "it would be better for her just to forget about it." However, she changed her mind sometime later when she saw defendant riding in his truck with a six-year-old mentally retarded girl.[3]

## C. *Defense*

Stanley Stahl testified that in July 1979 he went prospecting for gold with defendant and Marla. As he and defendant were leaving for the trip, Marla cried and said she wanted to come along. Defendant let her come. On each of the three nights Marla slept in the camper and the two men slept outside. Stahl, who was a light sleeper, never heard defendant get up and go into the camper. Marla appeared to be very happy throughout the trip.

Stahl and two others testified that the private road (Skunk Hollow Road) down which Brandy stated defendant drove his pickup before molesting her was virtually impassable during the winter.

Willa Gordon, defendant's wife, testified that when Gloria accused defendant of molesting Marla, he said he had never touched her. Later defendant told Gloria he had never touched Marla or any of the other girls and that he was sorry for "everything that was going on."

Defendant testified that he was 51 years old and had never molested Marla. He told Gloria he never molested her daughter or any other girls in Little Valley, and that he was "sorry . . . it was busting up her family . . . ." Defendant also said he was never alone with Brandy and never molested her. He related that he and Gloria had an argument regarding her use of his telephone and that Gloria stated, "I'll get even with you, Clyde Gordon." Defendant believes Gloria concocted the whole story.

## D. *Rebuttal*

Evidence was presented that the first 200 yards or so of Skunk Hollow Road is passable during the winter and that in December 1978 the entire road was hard and frozen.

---

[3]Since defendant was acquitted of the charges contained in count V of the amended information, no facts pertaining to that count are set forth.

DISCUSSION

I

Defendant contends that count I of the amended information, charging him with sodomy in violation of section 286, subdivision (b)(2)' between January 1, 1979, and November 30, 1980, was barred by the three-year limitations period of section 800. We agree.

Defendant correctly points out that Marla testified to two incidents of sodomy and that she also testified that all the sexual incidents involving defendant occurred before her mother married Richard Gordon on August 4, 1979. She testified as to one incident without specifying its location or date. On that unspecified occasion defendant tried to put his penis ("long thing") in her anus ("bottom") and it hurt; he "kept it on for a few minutes," and then stopped.[4] According to Marla, a second incident of sodomy occurred on the camping trip. On that occasion defendant and Marla were inside the camper when defendant put or tried to put his penis in her anus. It was established that this camping trip took place in July 1979.

This statute of limitations contention first poses the question whether, for purposes of stopping the statute, the commencement of the prosecution should be measured from the date that the information was filed (§ 800, as amended by Stats. 1978, ch. 663, § 8, pp. 2133-2134) or from the earlier date when the arrest warrant was issued. (§ 800, as amended by Stats. 1981, ch. 1017, § 1, p. 3925.)[5] As we shall see, the answer depends upon whether the sodomy offense was committed in 1978 or in 1979.

During the years 1978, 1979 and 1980 the statute of limitations for the crime of sodomy was three years. Penal Code section 800 then provided that "[a]n indictment for any felony, [except for crimes not relevant here],

---

[4]At the preliminary hearing, Marla related that this incident occurred in defendant's truck on a road from Little Valley. The Attorney General concedes that Marla testified at trial that she had been sodomized twice by defendant. He then inconsistently argues that the only sodomizing experience Marla testified to occurred on the camping trip. (*Ibid.*) In our view, the record of Marla's trial testimony can only be read as describing two separate incidents of sodomy occurring on different dates.

[5]Effective January 1, 1985, the Legislature comprehensively revised the statute of limitations for all crimes. (See Stats. 1984, ch. 1270, § 2.) Section 804 now provides that for purpose of the statute of limitations prosecution for an offense "is commenced when any of the following occurs: [¶] (a) An indictment or information is filed. [¶] (b) A complaint is filed with an inferior court charging a public offense of which the inferior court has original trial jurisdiction. [¶] (c) A case is certified to the superior court. [¶] (d) An arrest warrant or bench warrant is issued, provided the warrant names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint."

shall be found, an information filed, or case certified to the superior court within three years after its commission." (Stats. 1975, ch. 1047, § 1, p. 2466; Stats. 1978, ch. 663, § 8, pp. 2133-2134.) ■ ■ ■ ■ The original information was filed on February 16, 1983, and was amended the next day.[6] As amended, the information alleged that the sodomy occurred "from on or about the 1st day of January, 1979, through November 30, 1980." If the crime of sodomy had been committed on January 1, 1979, the statute of limitations expired three years later on January 1, 1982; if on November 30, 1980, then it expired on November 30, 1983.[7] Thus, the range of the limitation period for the crime as charged was from January 1, 1982 to November 30, 1983. If, on the other hand, the crime had been committed in 1978, a time outside of the dates alleged in the information, then the statute would have expired three years after the date of its commission.

Effective January 1, 1982, the limitations statute was again amended. Section 800, subdivision (a) again prescribed a three-year limitations period for section 286, subdivision (b) violations.[8] Under this amendment, the running of the statute stops when an arrest warrant is issued rather than when the information is filed.[9] To the extent that the evidence showed that the

---

[6]For purposes of stopping the limitation period by filing an information, however, the time is calculated from February 16th, the date of the filing of the original information. When the original information is timely filed, the statute of limitation does not bar the filing of an amended information charging the same or a lesser included crime. In such a case, the amended information is deemed to relate back to the date of the original information. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1143 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; 1 Witkin, Cal. Crimes (1963) Defenses, § 236, pp. 225-226; *id.*, (1983 supp.) § 236B, pp. 226-227.)

[7]Like civil actions, time for purposes of the statute of limitations in criminal cases is computed by excluding the first day, the date the crime was committed, and by including the last day, when the information was filed or the arrest warrant issued, as the case may be. (*People* v. *Twedt* (1934) 1 Cal.2d 392, 399 [35 P.2d 324]; 1 Witkin, Cal. Crimes, *supra*, § 236, p. 226.)

[8]We note parenthetically that prior to its most recent amendment (see Stats. 1984, ch. 1270), section 800 provided a six-year limitations period for violations of subdivisions (c), (d), and (f), but not subdivision (b), of section 286, (See former § 800, subd. (b), Stats. 1981, ch. 1017, § 1, p. 3925.)

[9]Section 800, subdivision (a), as amended in 1981, provided in pertinent part: "An indictment for any felony, [except for listed crimes not charged here], shall be found, or an arrest warrant issued by the municipal or, where appropriate, the justice court within three years after its commission." (Stats. 1981, ch. 1017, § 1, p. 3925.)

This version of section 800, enacted by chapter 1017 of the 1981 statutes, was "an apparent effort to reconcile statutory law with the recent California Supreme Court decision in *Hawkins* v. *Superior Court* [(1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916]. . . . *Hawkins* requires a postindictment preliminary hearing if the defendant requests. A postindictment hearing, however, may involve the same witnesses and the same case that the district attorney presented at the indictment; an expensive and duplicative effort. Allowing the statute of limitations to be satisfied by the issuance of an arrest warrant eliminates the need for an indictment to satisfy or toll the statute. . . . [¶] Chapter 1017 specifically

sodomy occurred during the charged period beginning on January 1, 1979, the amendment applies to this case because it was enacted before the old statutory period had expired. ■ In such a case, "[t]he matter is governed by the rule enunciated by Judge Learned Hand in *Falter* v. *United States* (2d Cir. 1928) 23 F.2d 420 . . . which upheld the right to prosecute within a period extended by an amendment to an existing statute if the amendment was adopted prior to the expiration of the original period of limitations. He stated, 'But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.' [Citations]." (*People* v. *Eitzen* (1974) 43 Cal.App.3d 253, 266-267 [117 Cal.Rptr. 772]; accord, *People* v. *Swinney* (1975) 46 Cal.App.3d 332 [120 Cal.Rptr. 148]. See also Uelmen, *Making Sense out of the California Criminal Statute of Limitations, supra,* 15 Pacific L.J. at pp. 71-72.) The warrant for defendant's arrest was issued by the justice court on April 30, 1982, and for any sodomy committed on or after January 1, 1979, the statute stopped running on that date.[10]

But to the extent that the evidence showed that an act of sodomy occurred in 1978, a time outside the period alleged in the information, the old statute must govern because it necessarily expired before the effective date of the new amendment. The statute of limitations for sodomy committed in 1978 expired three years later in 1981 and the amendment in question was not effective until January 1, 1982. The information was not filed until February 16, 1983, and hence any act of sodomy committed in 1978, more than three years before the filing of the information, was time barred. Thus whether the sodomy offense occurred in 1978 and the measurement is from its commission to the filing of the information and whether it occurred after January 1, 1979, but before April 30, 1979, and the measurement is from its commission to the date the warrant issued, the sodomy charge was still untimely. Because no date was given for the first incident described above, and because it could have occurred after January 1, 1978, the period when the

---

expresses the intent of the Legislature that the issuance of an arrest warrant to toll or satisfy the statute of limitations will continue only until a decision of a court of appeal, the California Supreme Court, or an amendment to the Constitution provides that a person charged by indictment is not entitled to a preliminary hearing. Upon that occurrence, Chapter 1017 specifies that the statute of limitations will be satisfied or tolled by an information filed with, or a case certified to, the superior court within the appropriate time period." (Comment, *Review of Selected 1981 California Legislation* (1982) 13 Pacific L.J. 513, 662, fns. omitted; see also former § 802.5; Uelmen, *Making Sense out of the California Criminal Statute of Limitations* (1983) 15 Pacific L.J. 35, 43-44, 68.) The decision in *Hawkins* has not been abrogated and the quoted version of section 800 consequently remained in effect until its most recent amendment effective January 1, 1985.

[10]The Attorney General filed a "Motion to Take Judicial Notice" requesting that we judicially notice the arrest warrant issued by the justice court of the Lassen Consolidated Judicial District, a certified copy of which was attached thereto. Pursuant to Evidence Code section 452, subdivision (d), permitting judicial notice of the records of any court of this state, we grant the motion and notice the document.

sexual misconduct first began, or even after January 1, 1979, the beginning of the period designated in count I, but before April 30, 1979, three years prior to the date the arrest warrant was issued, the People have failed to prove that the crime could only have occurred inside the applicable three-year limitations period. █ As Justice Peters noted for the Court of Appeal in *People* v. *Allen* (1941) 47 Cal.App.2d 735, 748 [118 P.2d 927], "[t]he fact that the statute of limitations is jurisdictional necessarily determines that a prosecution within the period specified is an essential element of the offense." It follows therefore that the burden is on the People to prove that the charged offense occurred within the period of limitations. (*People* v. *Mack* (1959) 169 Cal.App.2d 825, 829 [338 P.2d 25].) █ Here the prosecution proved two acts of sodomy, one possibly barred by the statute and the other not. In the absence of an appropriate instruction, that equivocal proof fails as a matter of law to overcome the prosecution's burden.[11] Since it is impossible to determine whether the jury convicted defendant of an offense not shown to have been committed within the period of limitations, the conviction is fatally defective. As the Court of Appeal noted in a comparable situation in *People* v. *Hefner* (1981) 127 Cal.App.3d 88, 97 [179 Cal.Rptr. 336], "[w]e have no way to gauge the effect of this error. Since we cannot assume the jurors unanimously agreed on the act constituting the offense charged, we are unable to say a miscarriage of justice did not occur. (*People* v. *Gainer* (1977) 19 Cal.3d 835, 854-855 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73].)" Accordingly, we are constrained to hold that the conviction based on count I was time barred and hence must be reversed.

## II.

Defendant next contends that he was denied due process because the jury was not instructed which acts the prosecution was relying upon to prove counts I (sodomy) and II (lewd and lascivious act upon Marla). There are two facets to this asserted error: First, was the prosecution required to elect the particular act it was relying upon to make good the allegation in the information? Second, when the jury was presented with more than one factual basis which might constitute the crime charged, should it have been instructed along the lines of CALJIC No. 17.01 that it had to unanimously agree upon the commission of the same act or acts constituting the crime?[12]

---

[11]The jury was not instructed on the statute of limitations and hence was not informed that defendant could only be found guilty if the sodomy had been committed in 1979 and within three years before the issuance of the arrest warrant. (See CALJIC No. 4.70 (4th ed. 1979).)

[12]CALJIC No. 17.01 (4th ed. 1979) provides: "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

There has been a recent effluence of cases dealing with the problems arising when a violation of a criminal statute is charged and the evidence describes several acts, any one of which could constitute the crime charged. (See *People* v. *Metheney* (1984) 154 Cal.App.3d 555 [201 Cal.Rptr. 281]; *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561 [199 Cal.Rptr. 796]; and *People* v. *Deletto* (1983) 147 Cal.App.3d 458 [195 Cal.Rptr. 233]), adding to an already long line of cases (*People* v. *Diedrich* (1982) 31 Cal.3d 263 [182 Cal.Rptr. 354, 643 P.2d 971]; *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323]; *People* v. *Castro* (1901) 133 Cal. 11 [65 P. 13]; *People* v. *Epps* (1981) 122 Cal.App.3d 691 [176 Cal.Rptr. 332]; *People* v. *Alva* (1979) 90 Cal.App.3d 418 [153 Cal.Rptr. 644]; *People* v. *Moreno* (1973) 32 Cal.App.3d Supp. 1 [108 Cal.Rptr. 338].)

■ Emerging from this long line of cases is the so-called "either/or" rule: when the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5[13] or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. (See *People* v. *Dunnahoo, supra,* 152 Cal.App.3d at pp. 568-570,[14] and cases cited therein including *People* v. *Diedrich, supra,* 31 Cal.3d at pp. 280-281.)[15]

---

[13]CALJIC No. 4.71.5 (4th ed. 1982 pocket pt.) provides: "Defendant is charged in [Count _____of] the information with the commission of the crime of _____, a violation of section _____of the Penal Code, on or about a period of time between _____and ___. [¶] In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act [or acts] constituting said crime within the period alleged. [¶] And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act [or acts] constituting said crime within the period alleged. [¶] It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[14]In *People* v. *Dunnahoo, supra,* 152 Cal.App.3d 561, defendant was charged with and convicted of two counts of lewd conduct with a child (Pen. Code, § 288, subd. (a)) and two counts of orally copulating a person under the age of 14 (Pen. Code, § 288a, subd. (c)). The charged offenses allegedly occurred over a seven-month period. At trial, the two 7-year-old victims testified to more than four unlawful sexual acts. Defendant made no request for an election by the prosecution as to which of the acts testified to by the victims were to be relied upon as proof of the charged offenses. The jurors, however, were instructed using CALJIC No. 17.01 that they must agree unanimously on which unlawful sex acts defendant committed. The Court of Appeal affirmed and held that the demands of due process—that an accused be notified of the charges against him so that he will have a reasonable opportunity to prepare and present his defense—did not require the prosecution to elect the particular sex acts relied upon as proof of the charged offenses when an unanimity instruction had been given and neither alibi nor wrongful identification was offered as a defense. (*Id.,* at pp. 571-572.)

[15]A further aspect of the rule is that, when no election is formally made, it is presumed that the first offense upon which substantial evidence is introduced is the one selected. (*People* v. *Metheney, supra,* 154 Cal.App.3d at p. 563; *People* v. *Epps, supra,* 122 Cal.App.3d at p. 702.) In order for this presumption to operate, however, the jury must be so informed. (*Ibid.*) Here, the jury did not receive such an instruction.

Turning to this case, we note that while no election of a specific act was made, an instruction in the form of CALJIC No. 17.01 was given for the counts for lewd and lascivious conduct.[16] That instruction, however, was not given for the sodomy charge contained in count I. The question whether a CALJIC No. 17.01 instruction cures a failure by the prosecution to elect a specific act has been answered in the affirmative in a long line of cases (*People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 568, and cases cited therein), which we choose to follow. Accordingly, we find no error relating to count II.[17]

We turn next to the sodomy charge. As we have noted earlier, count I alleged the commission of the crime of sodomy between January 1, 1979, and November 30, 1980. As we have recited, Marla testified to two incidents of sodomy or attempted sodomy. Defendant made no request for an election and the trial court on its own did not require the prosecution to select a specific act and date. Moreover, as to this crime, the jury was not instructed in the language of CALJIC No. 17.01, or similar language, that in order to convict defendant of sodomy it must unanimously agree on a particular act. We consequently hold that the prosecution's failure to elect between the two acts testified to by minor, and arguably forming the basis of the sodomy allegation in count I, and the court's failure to instruct, *sua sponte,* on the unanimity requirement with respect to a particular act constitute error. (*People* v. *Diedrich, supra,* 31 Cal.3d at p. 280; *People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 570; *People* v. *Madden* (1981) 116 Cal.App.3d 212, at pp. 218-219 [171 Cal.Rptr. 897].)

We note also that the "continuous course of conduct" exception to the "either/or" rule is not applicable here. This exception arises when the criminal acts are so closely connected that they form part of one and the same transaction, and thus one offense. (*People* v. *Mota* (1981) 115

---

[16]The jury was instructed with respect to violation of Penal Code section 288: "The defendant is charged with the offenses of committing a lewd act with a child. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[17]For the reasons stated there, we agree with the concurring opinion that the trial court has no *sua sponte* duty to compel the prosecution to select the specific act relied upon for a conviction under a particular count. In the absence of a request for election by the defendant, the "either/or" rule applies and the court, instead of forcing a prosecutorial election, may simply instruct the jury that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. Since the defendant here did not request any election by the prosecution, we need not address the question, insightfully discussed at length in the concurring opinion, whether the trial court is duty bound to honor such a request in all cases.

Cal.App.3d 227, 233 [171 Cal.Rptr. 212].)[18] Thus, "[s]eparate acts may also result in but one crime if they occur within a relatively short time span . . . ." (*People* v. *Epps, supra,* 122 Cal.App.3d at p. 702, citation omitted.) In this case, there is absolutely no evidence concerning the timing of the two acts of sodomy, except that they allegedly occurred between 1978 and August 1979 and that one may have occurred during a camping trip in July 1979.

Does this error require reversal? The *Chapman* standard (whether the error was harmless beyond a reasonable doubt [*Chapman* v. *California* (1967) 386 U.S. 18, 24 (17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065)]), it has been held, must be applied when error is based on failure to instruct with CALJIC No. 17.01, or its equivalent. (*People* v. *Metheney, supra,* 154 Cal.App.3d at pp. 563-564; *People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 574; *People* v. *Deletto, supra,* 147 Cal.App.3d at pp. 471-472.)

In *Diedrich,* the Supreme Court, after holding that the trial court's refusal to give CALJIC No. 17.01 constituted error, considered the prejudicial effect of the error: "The next question is whether the error was prejudicial. We feel bound to hold that it was. *This is not a case where the jury's verdict implies that it did not believe the only defense offered.* Diedrich's defenses differed: As far as the Jolly Fox offer is concerned, it consisted of a simple denial. The Remington transactions were 'explained.' Having in mind that the proof of the Jolly Fox offer depended, essentially, on the testimony of a single immunized witness and that the proof of bribery via the Remington transaction was somewhat circumstantial, we feel bound to conclude that the error was prejudicial." (*People* v. *Diedrich, supra,* 31 Cal.3d at pp. 282-283, italics added.) Under the *Diedrich* analysis, the test for harmless error is whether the case is one in which the jury's verdict necessarily implies that it did not believe the only defense offered. (See *People* v. *Metheney, supra,* 154 Cal.App.3d at p. 564; *People* v. *Deletto, supra,* 147 Cal.App.3d at p. 466.)

In the present case, we cannot say the error was harmless. Marla testified to two distinct and distinguishable acts: (1) The first act, for which no date was given, involved a sodomy or attempted sodomy that lasted several min-

---

[18]This exception also arises when the statute contemplates a course of conduct consisting of a series of acts over a period of time. (See, e.g., *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299].) Thus this exception "has been used with statutes susceptible of such an interpretation, e.g., child abuse, failure to provide for a minor child, and pandering." (*People* v. *Epps, supra,* 122 Cal.App.3d at p. 702, citations omitted.) Sodomy obviously is not such a crime. (See *People* v. *Madden, supra,* 116 Cal.App.3d at pp. 217-219, and cases cited therein.)

utes and hurt. (2) The second act occurred during a camping trip, fixed by another witness in July 1979; there was no indication as to the length of time of the sodomous conduct, but it hurt. Defendant's common defense to both the first and second acts was a general denial that he ever molested Marla and an assertion by defendant that the whole story had been concocted (namely because Gloria was trying to blackmail defendant; was being given the choice between testifying against defendant or facing criminal charges for welfare fraud; and had an argument with defendant concerning her use of his telephone during which Gloria said "I'll get even with you, Clyde Gordon."). However, with regard to the camping trip incident, the defense also presented a second defense by introducing evidence that defendant slept outside the camper and did not have the opportunity to be alone with Marla in the camper during the entire trip. Moreover, we note that the first act was distinguishable from the second act insofar as Marla testified that defendant's first act lasted several minutes while no duration was assigned to the second act. This testimony could have been crucial on the issue of penetration. (See § 287.)

Because some of the jurors may have believed the lack of opportunity defense to the second act, and other jurors not, and because some jurors may have believed there was penetration with respect to the first act of sodomy but not the second, and others not, we must conclude, there being *more than one* defense offered, that the jury verdict does not establish beyond a reasonable doubt that the jury rejected the same or only defense offered. (See *People* v. *Epps, supra,* 122 Cal.App.3d at p. 695 [failure to give CALJIC No. 17.01 required reversal where defendant, convicted of one count of child molesting (Pen. Code, § 647a), had various explanations for different acts of alleged molestation]; *People* v. *Alva, supra,* 90 Cal.App.3d at pp. 421-423 [defendant charged with one count of incest (Pen. Code, § 285) and the minor testified to acts of intercourse regularly between February and July and the minor's brother, who provided defense testimony, moved into the house in May].) Moreover, because the jury could have accepted one of the defenses and not another, e.g., no penetration on the second occasion, there is no basis in reason for the inference that the jury must have believed beyond a reasonable doubt that defendant committed *both* acts of sodomy. (Cf. *People* v. *Deletto, supra,* 147 Cal.App.3d at p. 473 [failure to give CALJIC No. 17.01 held harmless error where both acts described by the minor clearly constituted unlawful acts of oral copulation].) We conclude that as to the sodomy count (count I) the trial court committed reversible error by failing to instruct the jury using CALJIC No. 17.01 or an equivalent. Thus, even if we had not concluded that the sodomy count was barred by the statute of limitations, we would be compelled to reverse that count for this instructional error.

## III

■ Defendant next contends that in relation to counts I and II it was error to give CALJIC No. 4.71 and not No. 4.71.5.[19] Since we have already concluded that the sodomy charge in count I must be reversed on instructional errors and other grounds, we address the contention only as to count II.

"Where a defendant is charged in a single count, and the evidence shows more than one criminal act of the kind alleged, it is error to give CALJIC No. 4.71 because it does not require the jury to focus on a specific criminal act and to convict a defendant of that act beyond a reasonable doubt. The appropriate instruction, CALJIC No. 4.71.5, plays the same role as CALJIC No. 17.01 to the extent it requires the jury to agree beyond a reasonable doubt defendant committed the same act. . . . CALJIC No. 4.71 hypothetically [would] allow[] the jury to reach a nonunanimous verdict." (*People* v. *Deletto, supra,* 147 Cal.App.3d at pp. 474-475; citations omitted.)

Nevertheless, we conclude that the error was cured here as to count II because the court also instructed the jury in the language of CALJIC No. 17.01. CALJIC Nos. 4.71 and 17.01, read in conjunction, are not inconsistent: they instruct a jury confronted with an "on or about" allegation that while it need not find that the crime was committed on the precise date alleged (CALJIC No. 4.71), it must nonetheless unanimously agree that defendant committed the same act. (CALJIC No. 17.01.) Combined, these two instructions adequately instruct the jury on the point.[20]

## IV

Defendant next contends he was denied effective assistance of counsel because his attorney failed to: (1) force the prosecution to elect among the multiple sex acts testified to by victim Marla and forming the basis of counts

---

[19]CALJIC No. 4.71, as read to the jury, states: "When, as in this case, it is alleged that the crime charged was committed 'on or about' a certain date, if the jury finds that the crime was committed it is not necessary that the proof show that it was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date."
 CALJIC No. 4.71.5 is set out in footnote 13, *ante.*

[20]Because we conclude that there was no instructional error and also because we reverse the sodomy conviction on other grounds, we need not address defendant's contention that the sodomy conviction barred a concomitant conviction for lewd conduct with a child potentially based upon the same act. The question whether a defendant may be convicted of both sodomy with a child (§ 286, subd. (c)) and lewd conduct with a child (§ 288, subd. (a)) based on the same act is presently pending before the Supreme Court in *People* v. *Pearson* (Crim. 24299, hg. granted Jan. 16, 1985.)

I and II; (2) move to exclude the evidence of all nonelected, uncharged sex acts; and (3) request limiting instructions (CALJIC Nos. 2.50, 10.35, 10.54, for instance) on the jury's use of uncharged sex acts, even assuming their admissibility. In our view, defendant's argument is unavailing.

In establishing ineffective assistance of counsel, the burden is on the defendant to show that trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate, which failure resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) This test has been expanded under *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144], to add that a defendant may also establish incompetence of counsel by proving that counsel failed to perform with reasonable competence and that it is reasonably probable that a more favorable result would have been forthcoming in the absence of counsel's alleged failings.

At the outset, our review of trial counsel's competency is limited to the record before us because defendant has not filed a corresponding petition for habeas corpus which could admit evidence outside the record on this issue. (See *People* v. *Pope, supra,* 23 Cal.3d at pp. 426-427, fn. 17; *People* v. *Apodaca* (1978) 76 Cal.App.3d 479, 489, fn. 3 [142 Cal.Rptr. 830].)

*Failure to move for election.*

The election issue involves only counts I and II. Since count I has already been reversed, we once again consider the issue only as to count II. To resolve the issue with respect to that count, we quote *People* v. *Dunnahoo, supra,* 152 Cal.App.3d at page 576, where the court addressed a nearly identical argument: "[S]ince Dunnahoo's only legitimate defense was one of credibility, failure of his counsel to force an election does not amount to ineffective counsel. The prosecution witnesses' credibility was tested by thorough cross-examination. Pursuant to predetermined trial strategy, Dunnahoo took the stand and also contradicted their testimony. The jury was given the CALJIC No. 17.01 unanimity instruction. Thus, on this issue, his trial counsel acted in a manner expected of a reasonably competent attorney."

Here, as in *Dunnahoo,* defendant's primary defense, at least on count II, was one of credibility. Victim Marla and her mother were cross-examined by defense counsel. Defendant took the stand and generally denied the accusations. Finally, the jury was instructed in the words of CALJIC No. 17.01. Since the posture of the case required the jury either

to find that all of the lewd acts occurred or none of them did, no useful purpose would have been served by attempting to force the prosecution to an election. We conclude, as did the *Dunnahoo* court, that defense counsel was not incompetent for failing to move for an election.

*Admission of uncharged offenses.*

There are three hurdles between defendant and a successful claim of ineffective assistance of counsel based on his counsel's failure to object to the admission of evidence of uncharged acts: (1) the offenses must be *un*charged; (2) the evidence must be *in*admissible; and (3) it must be reasonably probable a more favorable result would have resulted in the absence of that evidence. Defendant can clear only the first two hurdles.

First, an act is *un*charged if it falls outside the accusatory pleading. This can happen when the act testified to either involves a different actus reus (say for robbery or arson) or occurred at a time different than the charged offense.[21] In the instant case, acts not fixed in time by Marla arguably fell outside the information. These included, in relation to count I (sodomy), an act of sodomy which was not fixed within the time period alleged in count I and, in relation to count II (lewd and lascivious conduct), incidents when defendant rubbed Marla's thighs while driving in his truck, the numerous touchings, including sexual intercourse occurring over a period of time greater than that described in count II. Because the record reveals the admission of evidence of possibly uncharged acts, we turn to the question of their admissibility.

After *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], we must conclude that the evidence of these arguably uncharged offenses was inadmissible. Evidence Code section 1101 provides: "(a) Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct is inadmissible when offered to prove his conduct) on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan,

---

[21]We note that more than one offense can satisfy a particular allegation and that each offense that does should be considered a charged offense. This must be the case if CALJIC No. 17.01 is a cure for a failure of the prosecution to elect a specific act under a particular count. CALJIC No. 17.01 tells a jury confronted with testimony of multiple acts, all arguably satisfying the allegation, that it can convict a defendant of any one act so long as there is unanimity as to that one act. This means that multiple acts satisfying an allegation are *charged* acts, or else how could the jury convict based on any one act.

knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts. [¶] (c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

In *Tassell,* the Supreme Court dealt with a defendant who was charged with forcible rape and forcible oral copulation on a single victim. Defendant admitted the intercourse and oral copulation but denied the use of force. The prosecution produced two other females who testified to having been forcibly raped by defendant and forced to orally copulate him on occasions prior to the charged crimes. A divided Supreme Court found error, albeit nonprejudicial, in the admission of the evidence concerning the two uncharged crimes. The reasoning of the court was that since neither defendant's identity nor his intent to have intercourse with the victim was in dispute, the evidence of the other crimes was irrelevant to any "contested issue" in the case. (*Tassell, supra,* 36 Cal.3d at p. 88, fn. 7 and p. 89.)[22]

██ Because neither identity nor intent was an issue in this case, we must also conclude, like *Tassell,* that evidence of any uncharged crimes was inadmissible. The defense here was not that Marla mistook defendant for another person or that the charged offenses, if believed by the jury, were committed with innocent intent. The evidence was relevant only to defendant's disposition to act and therefore clearly contrary to Evidence Code section 1101, subdivision (a).

Even granting that reasonably competent counsel would have objected to introduction of the evidence of the undated crimes on the ground that they

---

[22]The decision in *People* v. *Tassell, supra,* 36 Cal.3d 77, was essentially a clarification of an earlier opinion, *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883], in which the Supreme Court articulated three factors for determining the admissibility of an uncharged offense. They were: "(1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*People* v. *Thompson, supra,* 27 Cal.3d at p. 315; original italics.) Thompson went on to define the first prong, materiality: "In order to satisfy the requirement of *materiality,* the fact sought to be proved may be either an ultimate fact in the proceeding or an intermediate fact 'from which such ultimate fact[] may be presumed or inferred.' Further, the ultimate fact to be proved must be 'actually in dispute.' If an accused has not 'actually placed that [ultimate fact] in issue,' evidence of uncharged offenses may not be admitted to prove it. The fact that an accused has pleaded not guilty is not sufficient to place the elements of the crimes charged against him 'in issue.'" (*People* v. *Thompson, supra,* 27 Cal.3d at p. 315; citations and fns. omitted.)

We also note that *Tassell* disapproved the line of cases which established an exception based on corroboration of a victim's testimony—where the other offense was testified to by one other than the victim of the charged crimes, the evidence was admissible; where that victim merely corroborated herself, it was excluded—because it conflicted with the *Thompson* rule requiring that an issue other than credibility actually be in dispute. (*Tassell, supra,* 36 Cal.3d at p. 89, fn. 8.)

constituted uncharged acts, we conclude defendant's claim of ineffective assistance of counsel must fail because he has not proven that it is reasonably probable a determination more favorable to him would have resulted in the absence of counsel's failings. (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 584; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Since the conviction based on count I is reversed on other grounds, we apply the *Watson* standard to counts II, III and IV only.

As to count II, alleging a lewd and lascivious act on Marla, she testified as to a specific act of touching and sexual intercourse occurring in defendant's tack room and within the period, June 1978 through November 1980, alleged in count II. This was a charged act. In light of defendant's credibility defense, nothing convinces us that the jury would have returned a more favorable verdict on count II, i.e., not guilty, in the absence of evidence of unspecified touching and sexual intercourse.

As to counts III and IV, alleging lewd and lascivious acts on Brandy W., we review the evidence against and for defendant. Brandy testified that approximately a week prior to December 22, 1978, defendant took her behind a barn on his property and stuck his hand down her pants and touched her vagina. Also, either two days before or after the above described incident, defendant drove Brandy down a private road and had sexual intercourse with her in his truck. Defendant offered evidence that the private road was impassable in the winter, which evidence was rebutted by the prosecution. The issue was essentially one of credibility, defendant's word against Brandy's, and the jury resolved it in Brandy's favor. We cannot say that in the absence of the contested evidence there is a reasonable probability that a result more favorable to defendant would have been reached.

*Limiting instructions.*

Defendant argues that assuming the prosecutor had elected the specific acts it was relying upon in counts I and II and could show a legitimate purpose for introducing one or more uncharged acts, defense counsel would have been under a duty to request appropriate limiting instructions depending on the prosecutor's theory. (For example, see CALJIC No. 2.50 (evidence of other offenses for particular limited purpose); No. 10.35 (evidence of lewd acts on same child to show intent); No. 10.54 (evidence of uncharged sodomy to show disposition or intent).)

Because we have concluded that the evidence of uncharged acts was subject to objection and was inadmissible, we need not address the further contention that defendant's counsel erred in not requesting limiting instructions. Limiting instructions would not have cured counsel's failure to object

to the evidence. As discussed above, counsel's failure to object, however, did not constitute ineffective assistance of counsel because the mistake by counsel was harmless.

## V

Finally, defendant contends that the trial court erred in failing to instruct on lesser included offenses on its own motion. We need only discuss this contention with respect to counts II, III and IV. On those counts, we reject defendant's argument.

In *People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311], the Supreme Court discussed generally the obligation of trial courts to instruct, *sua sponte,* on lesser included offenses and defenses: " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. . . .' In *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1], the lead opinion . . . stated that the court need only give the instruction if the accused proffers evidence sufficient to 'deserve consideration by the jury, i.e., "evidence from which a jury composed of reasonable men could have concluded" ' that the particular facts underlying the instruction did exist. . . . [¶] *Flannel* did not directly discuss the standard to be utilized in determining when the court has a duty to instruct *sua sponte* on necessarily included offenses. However, logic would seem to require that the same standard should generally apply. The trial court is not obligated to instruct *sua sponte* on necessarily included offenses unless the evidence would justify a conviction of such offenses." (*Id.,* at pp. 323-325; citations omitted.)

On count II, defendant urges that the trial court erred in failing to instruct, *sua sponte,* that attempted sodomy, sodomy, unlawful sexual intercourse and misdemeanor child molestation are lesser offenses included within the crime of lewd and lascivious conduct. (§ 288, subd. (a).) Strictly speaking, neither sodomy nor unlawful sexual intercourse are lesser included offenses

of the crime of lewd and lascivious conduct.[23] ■ As the Supreme Court explained in *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 369 [173 Cal.Rptr. 453, 627 P.2d 183], when the accusatory pleading does not otherwise give notice of the lesser, the test of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. ■ Obviously one can commit a lewd act without necessarily also committing sodomy or unlawful sexual intercourse. Both of these two crimes require penetration while lewd conduct does not. (§§ 261.5; 287.) It is also true that one can commit an attempted sodomy without also necessarily violating section 288, as when the attempt is interrupted before any lewd or lascivious touching has yet occurred. Attempted sodomy is therefore also not an included offense of the crime of lewd conduct. (See *People* v. *Nicholson* (1979) 98 Cal.App.3d 617, 623-624 [159 Cal.Rptr. 766].)

■ It is true that, by statutory definition, one can violate section 288 by committing "any lewd or lascivious act <u>including</u> any of the acts constituting other crimes provided for in Part 1 of this code . . . ." (§ 288, subd. (a); underscoring added.)[24] This language, however, simply means that it is not a defense to a prosecution for lewd conduct to show that defendant also committed some other sexual crime in the process of violating section 288. (*People* v. *Nicholson, supra,* 98 Cal.App.3d at pp. 624-625.) Thus, an accused can violate section 288 by committing an act of unlawful sexual

---

[23]In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303], the Supreme Court held that defendant had a due process right, upon request, to instructions on a lesser related, but not included, offense when the lesser related offense is closely related to the charged crime, there is evidence of its commission and defendant's theory of defense is consistent with such a finding. *Geiger* provides no aid to defendant here, however, because defendant made no such request and because, in any event, it applies "only to cases in which a trial or retrial commenced after this decision becomes final." (*Id.,* at p. 532, fn. 13.) *Geiger,* filed on February 2, 1984, consequently became final on March 3, 1984. (Cal. Rules of Court, rule 24(a).) The trial in this case commenced nearly a year earlier on March 8, 1983.

[24]The *Greer* court explained: "Under section 288, the crime of rape, for example, has been expressly made punishable in different ways and by different provisions of the code. [¶] Section 288 now specifically includes acts constituting other crimes and permits a greater penalty for those acts, if they are committed with the specified intent, upon a child under 14 years of age. . . . [T]he crime of statutory rape is included within section 288 by that section's own terms . . . Now statutory rape committed upon the body of a child under 14 years of age can be punished as a lewd and lascivious act." (*People* v. *Greer* (1947) 30 Cal.2d 589, 603 [184 P.2d 512].)

As we have already noted in the margin, effective January 1, 1980, section 286, subdivision (b)(2) was amended to read: "*Except as provided by Section 288,* any person over the age of 21 years who participates in an act of sodomy with Another person who is under 16 years of age shall be guilty of a felony." (Italics added.) Under this amendment, an act of sodomy on a child under 14 years of age which does not fall within section 286, subdivision (c) presumably is punishable only as lewd conduct under section 288. Thus sodomy of a child under 14 years would not constitute a violation of section 286, subdivision (b)(2) and no lesser included instruction for that crime of sodomy would be required.

intercourse or sodomy. The statutory language, however, does not mean that those crimes are necessarily lesser included offenses requiring an appropriate instruction on lesser offenses.[25] Obviously, the jury should not be instructed that if they are not satisfied beyond a reasonable doubt that defendant is guilty of lewd and lascivious conduct, it may convict him of lesser offense of sodomy. If defendant committed an act of sodomy, he simultaneously also committed a lewd act and he should therefore be convicted of the charged crime of lewd and lascivious conduct in violation of section 288. As the *Nicholson* court noted, this "language has led some courts to state that the crime of statutory rape or unlawful sexual intercourse is 'necessarily included' under the provisions of section 288. [Citations.] The usage is confusing at best and should be avoided." (*Id.,* at p. 625, fn. 4.) What this section does mean is that while a single act of intercourse may violate both section 261.5 and 288, defendant cannot be punished for both crimes. (§ 654.) The double punishment issue is analytically distinct from the question of lesser included offenses and does not involve any determination by the jury. In short, the trial court did not err in failing to instruct on its own motion that attempted sodomy, sodomy or unlawful sexual intercourse were lesser included offenses within the crime of lewd and lascivious conduct charged in Count II.

 Misdemeanor child molestation (§ 647a), however, is a lesser included offense of section 288. (*People* v. *Poon* (1981) 125 Cal.App.3d 55, 80 [178 Cal.Rptr. 375]; *People* v. *La Fontaine* (1978) 79 Cal.App.3d 176, 183 [144 Cal.Rptr. 729].) However, no instruction on the lesser offense of child molestation was required in this case because if defendant was guilty at all, he was guilty of the greater offense. (*People* v. *Wickersham, supra,* 32 Cal.3d at pp. 323-324; *People* v. *Reeves* (1980) 105 Cal.App.3d 444, 453-454 [164 Cal.Rptr. 426].) Here defendant was either innocent of the charge under section 288 (i.e., the jury believed his word) or he was guilty of of that charge (i.e., the jury believed Marla). We further note that the giving of an instruction on misdemeanor child molestation, when not requested by the defense, would have been inconsistent with defendant's defense, which was a complete denial of committing any sexually related acts upon Marla. For both of these reasons, we hold that the court did not err in failing to instruct, *sua sponte,* on the lesser offense of child molestation.

Counts III and IV allege lewd and lascivious acts on Brandy W. in violation of section 288. Count III alleges a violation "on or about December

---

[25]The standard instruction on lesser included offenses is found in CALJIC No. 17.10 (1984 Revision). That instruction reads: "If the jury is not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged and it unanimously so finds, it may convict him of any lesser offense if the jury is convinced beyond a reasonable doubt that he is guilty of such lesser offense. [¶] [The offense of _____is a lesser offense to the offense charged in Count _____.] . . . ."

1 through 22, 1978;" count IV a violation "on or about December 22, 1978." At trial, Brandy testified to two incidents involving defendant and occurring within two days of one another: First, defendant took her behind a barn and put his hand down her pants and touched her vagina; second, defendant drove her to a private road in his pickup truck, had her lie down on the seat, pulled down her pants and "stuck his penis in [her] vagina." Because of the manner of charging and Brandy's uncertainty as to which incident occurred first, it was impossible for the jury to determine which count was based on the alleged touching and which count was based on the alleged sexual intercourse. We likewise cannot distinguish between the counts and so, for reference purposes, will refer to them separately as the "touching count" and the "sexual intercourse count."

As to the "sexual intercourse count," we have already noted that unlawful sexual intercourse (§ 261.5) is not a lesser offense necessarily included within section 288. The trial court consequently did not err by declining to instruct the jury on its own motion on that crime as a lesser included offense.

On the "touching count," defendant urges that the trial court erred in failing to instruct, *sua sponte,* on misdemeanor child molestation. Brandy testified that defendant escorted her behind the barn, reached his hand down her pants, and touched her vagina. Defendant simply denied doing the act. For the same reasons we rejected this contention as it related to count II, we again reject it on counts III and IV.

## CONCLUSION

The judgment of conviction for sodomy in violation of section 286, subdivision (b)(2) as charged in count I of the amended information is reversed with directions to the trial court to dismiss this count. The trial court is further directed to prepare and forward an amended abstract of judgment to the Department of Corrections reflecting this dismissal. In all other respects, the judgment is affirmed.

Regan, Acting P. J., concurred.

**SIMS, J.**—I concur in the majority opinion. I write separately to address in greater detail defendant's contention that the prosecutor had a *sua sponte* duty to elect, at the outset of trial, the act relied upon by the prosecution to obtain a conviction on each count pleaded in the information.

Where the information charges an offense, and where the evidence at trial shows more than one act of the kind charged within the timeframe pleaded in the information, either the election of a specific act by the prosecution,

or an instruction by the court selecting the first act upon which evidence was introduced, will prevent a nonunanimous verdict, because the jury is told to determine guilt or innocence upon the single act selected. (See, e.g., *People* v. *Metheney* (1984) 154 Cal.App.3d 555, 563 [201 Cal.Rptr. 281]; *People* v. *Epps* (1981) 122 Cal.App.3d 691, 701-702 [176 Cal.Rptr. 332].) I agree with the majority that a jury instruction in the form of CALJIC No. 17.01 equally cures any problems with a nonunanimous verdict, because the jury is told they must all agree on the same act. To that extent, I also agree with *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561, at page 570 [199 Cal.Rptr. 796].

However, the doctrine of prosecutorial election was not devised simply to avoid nonunanimous verdicts. As *Dunnahoo* itself acknowledges (*id.*, at pp. 570-571), the doctrine was originally designed in part to insure that a defendant receives fair notice of the charges against him so he can prepare a defense. The doctrine of prosecutorial election for purposes of fair notice is traceable to two vintage cases decided only months apart: *People* v. *Castro* (1901) 133 Cal. 11 [65 P. 13] and *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323]. *Williams* is the more illuminating of the decisions. It arose out of a prosecution for rape of a 13-year-old girl. (P. 167.) The doctrine of prosecutorial election can be addressed intelligently only by knowing what *Williams* was all about. To that end, I quote from the case at some length:

"But one other matter requires notice at our hands. That arises from an instruction given by the court, to the effect that if the jury found that defendant had had sexual intercourse with the prosecutrix at any time within three years before the finding of the indictment, she being under sixteen years of age, etc., they must find him guilty. The prosecutrix testified that she lived with the defendant for a period of four months, and on nearly every day during that time, and sometimes five or six times a day, they had sexual intercourse with each other. In addition to this sweeping general assertion, many alleged acts were specifically described, with circumstances of time, etc. Each of these acts was a separate offense, and the defendant could be tried for either, and separately for each of them. The jury were not even told that they must all agree that some specifically described act had been performed. A verdict of guilty could have been rendered under such an instruction, although no two jurors were convinced beyond a reasonable doubt, or at all, of the truth of the charge, as to any one of these separate offenses. Even worse than that was possible. As to every specific offense which there was an attempt to prove, and which could be met by proof, the defendant may have established his defense, and yet upon the general evidence of continuous crime, which, in the nature of things, he could only meet by his personal denial, he may have been convicted. And

how could he defend when he was not informed as to what particular offense, out of hundreds testified to by the prosecutrix, he was to be tried? Such a trial, upon a charge so indefinite as to circumstance of time or place, or any particular, except by the general designation, would be a judicial farce, if it were not something a great deal worse. That it was wrong, was held in the recent case of *People* v. *Castro,* [*supra,* 133 Cal. 11].

"
. . . . . . . . . . . . . . . . . . . . . . . . . .

". . . A defendant on trial upon a criminal indictment has a right to demand that the charge against him shall be stated in ordinary and concise language, that he may know upon what specific charge he is to be tried, so that he may prepare his defense. Practically, that is not done in these few anomalous cases, where any number of separate offenses may be proven, although the defendant is being tried for the commission of only one. Two cases upon this point are cited, in each of which a rule is declared, but the rules differ. In *People* v. *Flaherty,* 162 N.Y. 540, it is said: 'The indictment alleges acts constituting but one crime, and while the mistake as to the date will not prevent the prosecution from proving the crime charged in the indictment, the indictment will be deemed to cover the offense attempted to be proved nearest in point of time to the date of the indictment.' In *State* v. *Hilberg,* 61 Pac. Rep. 215 (Utah), it was said, after noticing that the prosecution could have proved *any one* act committed, 'When evidence was introduced, tending directly to the proof of one act, and for the purpose of securing a conviction upon it, from that moment that particular act became the act charged.' This rule is uncertain, and unfair to the defendant, because of the qualifying clause, 'for the purpose of securing a conviction upon it.' I think the prosecuting officer, when he commences the trial of a case of this class, where he is at liberty to prove one of several different offenses under the indictment, should at least as early as the commencement of the trial, inform the defense upon proof of what specific offense he intends to rely, and if he does not, the first evidence which would tend in any degree to prove an offense shall be deemed a selection, and unless that precise offense is proven, the defendant is entitled to an acquittal. Even this would leave a defendant in such cases at a disadvantge [*sic*], but he ought not be tried under less favorable circumstances." (*People* v. *Williams, supra,* 133 Cal. at pp. 167-169, italics in original.)

*Williams* tenders a virtual bouillabaisse of fair notice concerns. I think it crucial at the outset to extract from this soup some ingredients that serve no purpose other than confusion. Thus, for example, *Williams* mentions "the general evidence of continuous crime" and "a charge . . . indefinite as to circumstance of time or place," and then asks rhetorically, "And how could he defend when he was not informed as to what particular offense,

out of hundreds testified to by the prosecutrix, he was to be tried?'' (P. 168.)

This allusion to the vagueness of the evidence can easily lead to the conclusion a defendant has a right to notice of the specific time or place an offense occurred. That is obviously not the law. The prosecution has a duty to plead that an offense was committed within the period of an applicable statute of limitations. (See *People* v. *Chadd* (1981) 28 Cal.3d 739, 756-757 [170 Cal.Rptr. 798, 621 P.2d 837]; *People* v. *Witt* (1975) 53 Cal.App.3d 154, 162 [125 Cal.Rptr. 653].) Beyond that, whatever may be the prosecution's duty to provide notice of a charged offense to a defendant, the prosecution clearly has no duty to provide more explicit notice than human nature and science permit. A contrary conclusion would lead to the absurd result that those defendants who are most clever about concealing the precise time or place of their crimes, and who are therefore the most dangerous, would avoid prosecution.

Thus, for example, if the dismembered and decomposed body of defendant's wife is exhumed from its basement grave, and if the authorities are able to place the time of death only within a span of a year or two, the defendant cannot avoid prosecution by contending the vagueness of the charge may well prohibit him from pursuing an alibi defense based on the theory he was out of town during certain days or weeks during the years when his wife met her demise. Indeed, I am unaware of any American case in which a contention of this sort has been advanced. Similarly, in cases of sexual child abuse, a defendant has no right to notice of the time or place of a sexual act that is more explicit than the recollection of the child is capable of providing.[1]

A second concern of *Williams* is that, regardless of the vagueness of the time or place of criminal acts shown by the evidence, the defendant must receive reasonable advance notice of the acts to be relied upon by the prosecution to prove the offense. This concern makes sense. Unless a defendant knows the prosecution will try to hold him criminally responsible by proving he committed certain acts, the defendant cannot know whether he has a defense to any of those acts.

In my view, modern procedures in criminal cases have eroded if not eliminated *Williams'* concerns about fair notice in the indictment process. When *Williams* was decided in 1901, a defendant who was indicted was not

---

[1]However, as the majority correctly conclude in part I of their opinion, the vagueness of proof of the time of commission of a criminal act may result in a failure of the prosecution to prove beyond a reasonable doubt that the act occurred within the period of the statute of limitations.

entitled to a preliminary hearing. (See *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 587 [150 Cal.Rptr. 435, 586 P.2d 916].) A defendant apparently received, in addition to the indictment itself, a transcript of testimony taken before the grand jury. (Former Pen. Code, § 925; Stats. 1897, ch. 142, § 1, p. 204.) However, *Williams* makes no mention of any such transcript. It is clear *Williams* assumed that the only pretrial notice available to the defendant in the circumstances was the language of the *indictment*. "A defendant on trial upon a criminal indictment," said the *Williams* court, "has a right to demand that the charge against him shall be stated in ordinary and concise language, that he may know upon what specific charge he is to be tried, so that he may prepare his defense." (*Williams*, *supra*, at pp. 168-169.) Even assuming arguendo a defendant got a transcript of grand jury testimony in 1901, that transcript was unlikely to provide a defendant with much information about the circumstances of an offense because, "The prosecuting attorney is typically in complete control of the total process in the grand jury room . . . ." (*Hawkins* v. *Superior Court*, *supra*, 22 Cal.3d at p. 589.)

In *Hawkins*, our Supreme Court held, on equal protection grounds, that a defendant must be afforded a postindictment preliminary hearing, including rights of cross-examination by defense counsel. (*Id.*, at p. 593.) Itemizing the virtues of such a preliminary hearing, the court said, "[S]uch a hearing will assuredly provide the defense with valuable information about the case against the accused, enhancing its ability to evaluate the desirability of entering a plea or to *prepare for trial.*" (*Id.*, at p. 588, italics added.)

It is clear that in modern criminal prosecutions initiated by informations, the transcript of the preliminary hearing, not the accusatory pleading, affords defendant practical notice of the criminal acts against which he must defend. Nothing more need be said in support of this proposition than to point to several well-established rules of law. The first is that, under "simplified" California pleading, the circumstances of the offense need not be pleaded. (See generally Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, §§ 186-192, pp. 175-182.) " 'Section 952 . . ., which formerly required the pleading to set forth the particular circumstances of the offense charged, as amended [in 1927], declares that it shall be sufficient if it be "in any words sufficient to give the accused notice of the offense of which he is accused." There, in a nutshell, is stated the principle of our present simplified form of pleading a criminal offense—the accused is entitled to notice of the offense of which he is charged but not to the particular circumstances thereof, such details being furnished him by the transcript of the testimony upon which the indictment or information is founded.' " (*People* v. *Marshall* (1957) 48 Cal.2d 394, 399, fn. 5 [309 P.2d 456], quoting *People* v. *Beesly* (1931) 119 Cal.App. 82, 85-86 [6 P.2d 114], followed in

*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 751, fn. 11 [175 Cal.Rptr. 738, 631 P.2d 446]; see also Pen. Code, § 959; *People* v. *Jordan* (1971) 19 Cal.App.3d 362, 369 [97 Cal.Rptr. 570].)

Another relevant rule is that an information cannot charge offenses not shown by the evidence at the preliminary examination. (See *Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664-668 [94 Cal.Rptr. 289, 483 P.2d 1241].)

Other rules illustrate the facility with which an information may be amended. Thus, "Penal Code section 1009 permits an amendment to an information to add another offense shown by the evidence at the preliminary hearing. (*People* v. *Hall* (1979) 95 Cal.App.3d 299, 314 [157 Cal.Rptr. 107]; *People* v. *Spencer* (1972) 22 Cal.App.3d 786, 799 [99 Cal.Rptr. 681]; *Patterson* v. *Municipal Court* (1971) 17 Cal.App.3d 84, 88 [94 Cal.Rptr. 449].) This has been held not to violate a defendant's constitutional rights. (*People* v. *Tallman* (1945) 27 Cal.2d 209, 213 [163 P.2d 857].) An amendment to the information may be made as late as the close of trial if no prejudice is shown. (*People* v. *Witt* (1975) 53 Cal.App.3d 154, 165 [125 Cal.Rptr. 653].) Whether or not to allow an amendment is within the trial court's discretion, and its ruling will not be reversed absent an abuse of discretion. (*Ibid.; People* v. *Flowers* (1971) 14 Cal.App.3d 1017, 1020 [92 Cal.Rptr. 647].)" (*People* v. *Villagren* (1980) 106 Cal.App.3d 720, 724 [165 Cal.Rptr. 470].)[2]

These rules make it clear that an information plays a limited but important role: it tells a defendant what *kinds* of offenses he is charged with (usually by reference to a statute violated), and it states the *number* of offenses (convictions) that can result from the prosecution. But the time, place and circumstances of charged offenses are left to the preliminary hearing transcript; it is the touchstone of due process notice to a defendant.

In light of the notice function played by the preliminary hearing transcript, a prosecutorial election is unnecessary to advise defendant of the criminal acts he must defend against. When *Williams* asks "how could he defend when he was not informed as to what particular offense, out of hundreds testified to by the prosecutrix, he was to be tried?" (*People* v. *Williams, supra,* 133 Cal. at p. 168), the modern answer is that, at a minimum, a defendant must be prepared to defend against all offenses of the

---

[2]A new offense must arise out of the transaction which was the basis for the commitment on a related offense. (*People* v. *Jones, supra,* 4 Cal.3d at p. 665.)

kind alleged in the information as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information.[3]

Despite its arguable anachronism, *Williams* remains good law. (See *People* v. *Diedrich* (1982) 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971].) It is not for this court to abolish the doctrine of prosecutorial election. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Nonetheless, *Williams* is silent on the issue tendered here, i.e., whether the prosecutor must elect in each case (and/or whether the court *sua sponte* must force an election), or whether an election by the prosecution is required only when requested by the defendant.

I believe the better rule is to require an election only in the event of a defendant's request.[4] Because the preliminary hearing transcript puts a defendant on notice, I agree with the majority that multiple acts described therein are all "charged offenses" within a single count of an information provided the evidence at the preliminary hearing shows the acts meet the definition of the charged offense and were committed within the timeframe alleged in the information. (Maj. opn., *ante*, p. 859, fn. 21.) Since the various acts are all charged offenses, they may be proved at trial without concern for limitations on proof of noncharged offenses recently summarized in *People* v. *Tassell* (1984) 36 Cal.3d 77, at pages 83-89 [201 Cal.Rptr. 567, 679 P.2d 1]. However, once the prosecutor elects a single act as the charged offense, the other acts suddenly become noncharged offenses subject to *Tassell's* rules of exclusion from evidence.

I suggest that, as a practical matter, the effect of a rule requiring a mandatory election would simply be that prosecutors would routinely charge, as a separate count in the original complaint, each criminal act expected to be shown by the evidence at the preliminary hearing in order to avoid *Tassell* problems. The information would then plead, as separate counts, all acts sustained by the magistrate. The ironic net result would be an unfortunate limitation on prosecutorial charging discretion.

Thus, for example, we recently pointed out that the Penal Code's prohibitions on sexual conduct with minors apply to "a broad spectrum of con-

---

[3] I say "at a minimum" because a defendant must also be prepared to defend against an amendment to the information that charges offenses other than those charged in the original information, provided evidence in the preliminary hearing transcript shows the new offenses were committed and were transactionally related to the original offense. (See *Jones* v. *Superior Court, supra,* 4 Cal.3d at pp. 664-665.)

[4] In *People* v. *Jordan, supra,* 19 Cal.App.3d at page 371, the court assumed an election was available upon *demand* of a defendant.

duct, age groups, and relationships" including "strangers, fathers, stepfathers, and neighbors . . . ." (*People* v. *Cicero* (1984) 157 Cal.App.3d 465, 479 [204 Cal.Rptr. 582].) "Thus, a lewd act itself can range from a mere touching [citation] to oral copulation. [Citation.]" (*Ibid.*)

I think it unwise to promulgate a rule which, in its practical application, would encourage prosecutors to abandon their charging discretion and to seek a conviction for each act committed by a defendant regardless of circumstances of culpability. In its practical effect, such a rule would mean that, in cases where a child testifies an adult lewdly touched the child "every day" during a period of months or years (as is not uncommon in cases reviewed by this court), a defendant could be convicted of hundreds of counts of violation of Penal Code section 288. While this level of culpability may well be appropriate in some cases, I should prefer to leave prosecutors with practical discretion to determine, in the first instance, which ones they are. As I hope is clear, I would require the prosecutor to elect a specific act as the charged offense only upon a defendant's request. In my view, neither *Castro* nor *Williams* compels an election without request.[5] Since no request was made in the instant case, there was no error.

I am frankly uncertain how *People* v. *Dunnahoo, supra,* resolved the election problem. It is not clear to me whether *Dunnahoo* suggests (a) that a defendant must request an election in all cases; or (b) that a defendant must request an election except when defendant proffers a defense of alibi or mistaken identity, in which event an election is mandatory; or (c) that an election, with or without request by a defendant, is available only where such defenses are proffered.

My view is that, because of notice provided by the preliminary hearing transcript, an election is not required by due process and is therefore not required to be made *sua sponte* in any case, regardless of defenses. However, assuming *Williams* and *Castro* require a trial court to honor a *request* for an election, I fail to see why a defendant should have to tender alibi or mistaken identity defenses to force an election. If the election doctrine has any vitality at all (and we must assume it does), it could serve to focus the jury's attention on a single act. Theoretically, the prosecutor's election would allow the defendant to pursue defenses to the elected act that might

---

[5]For similar reasons, I would conclude a trial court has a duty only upon defendant's request to instruct the jury that the first act upon which evidence is introduced is the charged act. Such an instruction is unnecessary to avoid a nonunanimous verdict provided CALJIC No. 17.01 is given. I also note that if a defendant is not given reasonable notice in the information of the acts charged, defendant can demur to the information. (See *People* v. *Jordan, supra,* 19 Cal.App.3d at p. 371.) Once again, however, the demurrer is a weapon that must be fired by the defendant. Consequently, defense counsel can choose whether to run the risk of facing additional counts by demurring.

not apply to other acts shown by the evidence. A defendant may have a variety of defenses to that act other than alibi or mistaken identity.[6] So long as the election doctrine is viable, I think the rule should be that if a defendant wants the prosecutor to elect, defendant may request an election, and an election should be compelled, regardless of defenses.

I emphasize that the argument at this point is largely theoretical. In the real world, a request for an election by the prosecutor will often be greeted with a cross-motion by the prosecutor to amend the information to charge additional counts. But whether, and in what circumstances, a defendant may wish to run that risk is hard to ascertain in the abstract. Suffice it to say that, in the absence of higher authority to the contrary, I see no reason to require a *sua sponte* prosecutorial election. At the same time, I see no reason to limit defendant's request for an election to cases in which he pursues alibi or mistaken identity defenses.

---

[6]Consent, for example. Of course, since a defendant has no right to make the prosecutor select any given act, the prosecutor may well select an act not vulnerable to the proffered defenses.