[No. F006960. Fifth Dist. Nov. 3, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
GUILLERMO DIAZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Nicholas F. Reyes for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Raymond L. Brosterhous II and Jane L. Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### BALLANTYNE J.—

#### INTRODUCTION

Guillermo Diaz was charged in the information with eight counts of violation of Penal Code section 288, subdivision (a). The counts were cast in the language of the statute and covered broad periods of time, as long as four years.

After a jury trial, defendant was found guilty of three counts of annoying or molesting a minor (Pen. Code, § 647a), four counts of lewd or lascivious conduct against a child less than 14 years old (Pen. Code, § 288, subd. (a)), and one count of attempted lewd or lascivious conduct against a child under 14 (Pen. Code, §§ 664 and 288, subd. (a)). The prosecution presented evidence of acts in addition to those charged.

On appeal the defendant contends that he was entitled to a jury unanimity instruction or, alternatively, to an election by the prosecution as to which specific act it relied upon to prove each count, and also contends that he was denied effective assistance of counsel. We find these contentions to be without merit for the reasons discussed below and affirm the judgment.

#### FACTS

The defendant lived with his nieces and nephews as part of an extended family that shared a small home. Most of the children slept in the living room. The defendant kept candy in his bedroom which he sold to the children. He sometimes showed the girls pictures of naked men and women from magazines.

The girls began complaining to their older brother that they were being molested by the defendant. The defendant was ultimately charged with molesting four of his nieces whose ages were between five and thirteen at the time of the crimes.

R., who was the oldest sister, testified that when she was 13 years old she was in the defendant's room with her younger sister M. The defendant told the girls to go onto the bed, which they did. As he approached the bed, R. tried to leave the room. The defendant stopped her, and as R. slid down the side of the doorway the defendant began touching her vagina with his hand on the outside of her clothing. The touching lasted for approximately half a minute and the defendant was laughing at her.

R. further testified that at age 14, when she was in eighth grade, the defendant rubbed her breast with his hand and again was laughing as he touched her. Upon further questioning, R. reversed her statement that she was 14 years old at the time the defendant touched her breast and insisted that she was actually 13 at the time of the second incident.

C. was the next oldest victim. During trial she testified that while the family was living in its previous home, she was rubbed once on her vagina by the defendant outside her clothing and a second time while she was washing the car. The first event occurred just before the end of the school year, and the second event occurred the following summer. C., however, was unable to identify the specific year that these events occurred. The family had lived in Fresno during these incidents. Approximately two years before trial they moved to a small rural town outside Fresno.

C. testified concerning a third event that occurred when she was seven years old. During that event the defendant touched C.'s vagina inside her clothing. This event, however, predated the statute of limitations. Defense counsel specifically stated that he did not want an admonition to the jury concerning C.'s testimony regarding this uncharged crime because it would red-flag the issue for the jury. The trial court, however, denied defense counsel's motion for a mistrial and stated that it would use a jury instruction to admonish the jury not to apply this incident as a crime for any count against the defendant.

C. also related her observations of two acts of molestation she had witnessed against a younger sister, J. The first time C. and J. were lying on the bed together. J. was wearing only a blouse and no other clothes. C. could not see her uncle's hands, nor could she see whether her uncle was doing anything to J. The second time C. witnessed the defendant with his hand on J.'s vagina while J. was only wearing a blouse. This incident occurred about the same time C. was molested while washing the car with her uncle.

J. also testified at trial. She stated that the defendant touched her hips more than once. She denied that the defendant touched her anywhere else. J. also had no recollection of talking to the detective investigating the crime from the sheriff's department. At the time she testified, J. was only in kindergarten.

M., a 10-year-old at the time of trial, was the last sister to testify. She remembered that two years earlier, while the family still lived in Fresno, she had been playing outside in the water during summertime. M. was wearing a bathing suit. As she passed by her uncle's bedroom, he placed his hand through the leg of the bathing suit and touched her vagina.

M. twice witnessed the defendant molesting J. While walking past the defendant's bedroom, M. saw J. lying on the defendant's bed with her legs open, her dress up around her body, and with panties around her ankles. M. could see her sister's vagina. The defendant was bending down 10 to 12 inches from J.'s vagina with his head.

A second time M. again saw J. on the bed with her dress around her body and no panties. The defendant had his hand on J.'s "private part" with dirty pictures surrounding his walls. Although M. and her sisters had been shown dirty pictures before, this incident was unusual because M. had never before seen the defendant place dirty pictures around the walls of his entire bedroom. The magazines were usually stored under a pillow or the defendant's bed.

The prosecution then called Detective Charles Harkins who stated that he executed a search warrant on the defendant's bedroom and found calendars with nude women on them. Detective Harkins also found photos of nude adults along with Playboy and Playgirl magazines. Harkins testified that J. told him that she had been touched inside her panties on her vagina. J. also told Detective Harkins that her uncle had touched her with his penis, ejaculating on her.

Two of the defendant's daughters testified that they had never been molested by their father. One nephew testified that R., C. and J. hated their uncle and that R. wanted her uncle out of the house. R. had once accused her cousin of improper sexual advances.

In his opening argument the prosecutor told the jury that count I referred to the first incident reported by R., the time she tried to slide away from her uncle down the door. The prosecution stated that the second count referred to the incident involving the touching of R.'s breasts. Because Penal Code section 288, subdivision (a), requires molestation of a child under 14 years of age, the prosecutor further informed the jury that if they believed that R. was 14 years or older that the defendant would be guilty of violating the lesser included offense, Penal Code section 647a.

The prosecutor stated that count III involved the first touching of C.'s vagina when she was on the way to the bathroom. The prosecutor limited count IV to the touching that occurred while C. was washing the car.

Because M. had only testified to one event that directly concerned her, the prosecutor told the jury that count V was limited to the incident in which the defendant had touched M. through the leg of her bathing suit. Because J. completely denied any molestation by her uncle, the prosecutor

explained to the jury that counts VI, VII and VIII referred to incidents recounted by C. and M. Count VI, according to the prosecutor, was the incident witnessed by C. when she saw the defendant with his hand on J.'s vagina while J. was on his bed. The prosecution told the jury that count VII was the incident where M. witnessed J. on the defendant's bed with her dress up, with no panties, and with the defendant rubbing her vagina. The prosecutor stated that count VIII was the incident in which M. saw J. on the defendant's bed with her dress up, her panties around her ankles, and the defendant bent over with his head 10 to 12 inches away from J.'s vagina.

Consistent with its promise to the defendant to admonish the jury concerning C.'s testimony concerning the uncharged act outside the statute of limitations, the trial court gave the following instruction based on CALJIC No. 2.50: "Evidence has been introduced for the purpose of showing that the defendant committed crimes other than that for which he is on trial.

"Such evidence, if believed, was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes.

"Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show: The existence of the intent, which is a necessary element of the crime charged; a motive for the commission of the crime charged.

"For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. You are not permitted to consider such evidence for any other purpose."

DISCUSSION

I.

JURY UNANIMITY

■ It is error for a trial court to fail to give a jury unanimity instruction where the prosecution attempts to prove more criminal acts than are charged in the information. This rule dates back to 1901. (See *People* v. *Williams* (1901) 133 Cal. 165, 168-169 [65 P. 323]; *People* v. *Castro* (1901) 133 Cal. 11, 12-13 [65 P. 13].) The California Supreme Court unanimously reaffirmed the rule in 1982. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 280-283 [182 Cal.Rptr. 354, 643 P.2d 971].)

The requirement that a jury unanimously agree that one particular act constitutes a violation of a particular count has also been held to apply to a continuing course of conduct such as child molestation in which particular acts cannot be distinguished from one another and occur over a long span of time. (*People* v. *Alva* (1979) 90 Cal.App.3d 418, 426 [153 Cal.Rptr. 644].)

The alternative to giving the jury a unanimity instruction is for the prosecution to elect a single act for each charge. This alternative is discussed in *People* v. *Gordon* (1985) 165 Cal.App.3d 839, 853 [212 Cal.Rptr. 174]: "Emerging from this long line of cases is the so-called 'either/or' rule: when the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act." (Fn. omitted.) Where no prosecutorial election is formally made, it is presumed that the first offense upon which substantial evidence is presented is the one selected. (*People* v. *Metheney* (1984) 154 Cal.App.3d 555, 563 [201 Cal.Rptr. 281].) For the presumption to operate, however, the jury must be so instructed. (*People* v. *Gordon, supra,* 165 Cal.App.3d at p. 853, fn. 15.)

Where the prosecution fails to make the necessary election, the *Gordon* case holds that the trial court has a sua sponte duty to instruct the jury with CALJIC No. 17.01 or its equivalent in the absence of the prosecutor's election. (165 Cal.App.3d at p. 854.) *People* v. *Williams, supra,* 133 Cal. 165, 169, suggests that the prosecutor should make an election at the time of trial to give the defendant a meaningful opportunity to defend against the charges.

 ██ Neither CALJIC No. 17.01 nor its equivalent were given in the instant action. During trial, C. specifically testified about a molestation which occurred when she was seven years old. This act was outside the statute of limitations. C. also discussed a fourth act involving J. while the two girls were on the defendant's bed together that was not charged. Detective Harkins testified concerning two incidents in which J. admitted to him that she had been molested by her uncle. The prosecution did not specify these acts in written form in any specific count within the information. The prosecutor did not make a formal election at the beginning of trial, nor did the trial court instruct the jury that the first testimony in which substantial evidence was presented concerning a crime was deemed to be the selection by the prosecution as to a particular count.

The defendant contends that there is no basis from which a reviewing court could determine with certainty that the jury unanimously reached its verdict as to each count.

The issue of jury unanimity only applies as to C. and J. The number of acts charged in the information were identical to the number of acts for which evidence was presented as to R. and M. The convictions as to counts I, II and V, therefore, are not tainted with the possibility that the jury was not unanimous concerning whether or not each act specified within counts I, II and V actually occurred.

Two factors distinguish this case from other cases in which multiple acts are used to prove a single count. First, the trial court gave the jury an instruction based on CALJIC No. 2.50. The instruction specifically admonishes the jury not to use evidence of uncharged acts for any purpose other than to show motive or intent. The jury was instructed, "You are not permitted to consider the evidence for any other purpose."

If the jury was admonished to disregard evidence of acts not charged in the information for any purpose other than motive or intent, then there is no danger that part of the jury believed that the defendant committed the charged act while other jurors believed the defendant committed the uncharged act. The limiting instruction preserves the requirement that the jury be unanimous because the use of uncharged acts is carefully restricted by the instruction. ■ Uncharged acts cannot be used as evidence of the crime charged in the information. ■ Furthermore, a jury is presumed to have followed the instructions given to it by the trial court. (*People* v. *Almaraz* (1985) 173 Cal.App.3d 304, 319 [218 Cal.Rptr. 888]; *People* v. *Beach* (1983) 147 Cal.App.3d 612, 624-625 [19 Cal.Rptr. 381].)

■ The second distinguishing factor between this case and the other jury unanimity cases is that the prosecution in the instant action made an election in his opening argument to the jury tying each specific count to specific criminal acts elicited from the victims' testimony. Hence, the prosecution did make an election in this case. The question remains, however, whether the election was made in a timely manner.

The *Williams* case suggests that the prosecution must make its election at the beginning of the trial. The purpose of making an early election is to give the defendant a meaningful opportunity to prepare a defense to specific events. Here, this goal was clearly served by the preliminary hearing. The

testimony of the four child witnesses closely tracked their trial testimony. Each act discussed by each victim was the same at the preliminary hearing and at the trial, including C.'s statement that she was molested as a seven year old.

Thus, unlike the *Williams* case, the defendant had the advantage in this action of knowing from the preliminary hearing which acts the prosecution was going to use to prove its case against him. The *Gordon* case states that absent an actual election by the prosecution, the first act charged by substantial evidence is deemed elected. Following other authorities, the *Gordon* case further states that such an election cannot occur without the court instructing the jury that it is to consider the first act proven by substantial evidence. Here, however, such an instruction is unnecessary because the prosecution made its own selection. As long as a criminal defendant has the meaningful opportunity to prepare a defense to specific acts, as the defendant did here, no meaningful purpose would have been served in forcing this prosecutor to make an election at the beginning of the trial. The prosecution in the instant action never wavered from the evidence presented at the preliminary hearing. It is clear that the defendant in the *Williams* case did not have the benefit of a preliminary hearing or a pretrial election by the prosecution to give him the opportunity to focus upon specific acts so that he could tender a meaningful defense. That is not the situation in the instant action.

The combination of the trial court's CALJIC No. 2.50 instruction and the prosecution's opening argument election ensures that the jury reached a unanimous verdict as to each count and as to each act specified for each count. In light of the combination of the instruction and prosecutorial election during argument, the uncharged acts referred to by C. and by Detective Harkins did not create a significant probability that the jury failed to be unanimous in its verdict as to each count charged. This ground for appeal is rejected.

## II.\*

### Effective Assistance of Counsel

· · · · · · · · · · · · · · · · · · · ·

\* See footnote *ante,* page 1375.

## DISPOSITION

The judgment is affirmed.

Woolpert, Acting P. J., and Stone, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.