Filed 3/28/13  P. v. Blyman CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEPHEN DANIEL BLYMAN,<br><br>Defendant and Appellant. | F064029<br><br>(Super. Ct. No. F09903834)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Stephen Daniel Blyman of robbery, assault with a firearm, and criminal threats. He challenges his convictions on two grounds. First, the trial court erred prejudicially in excluding from evidence the videotaped pretrial interviews of his girlfriend and partner in the criminal activity, Candice Bradshaw, who testified against him at trial. Second, Blyman contends instructional error requires reversal of the criminal threats conviction because the trial court failed sua sponte to instruct the jury with a unanimity instruction.

We reject his contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On June 20, 2009, Miguel Urbano withdrew $470 from an ATM machine. As he walked back to his truck, Blyman and Bradshaw approached from behind. Blyman brandished a gun and said, "Open the door, don't do anything or I'll blow your head off." Bradshaw told Urbano, "It's better that you do it because I know him and he will blow it off."

Blyman and Bradshaw forced Urbano into the truck and told him to drive them down an alley to a nearby store. Once there, Blyman pointed the gun at Urbano's head and demanded money. Urbano handed over the money in his wallet, but would not turn over the wallet itself. Blyman yelled, "I'm going to blow your head off, mother fucker," then he lowered the gun and shot Urbano in the knee. Blyman and Bradshaw fled on foot.

Blyman and Bradshaw returned to an apartment, where they divided the money. The two then went to a store to purchase soda, cigarettes, chips, and "accessories" for the gun. Later, on the television news, Bradshaw learned that she and Blyman were wanted by the police. Blyman told Bradshaw to cover up his involvement in the criminal activity.

After the two were arrested, Bradshaw wrote to Blyman, complaining he had cheated on her with other women. Bradshaw eventually pled guilty to robbery and other

2.

offenses in exchange for a six-year prison sentence. The terms of her agreement required her to testify truthfully at Blyman's trial. Before she testified, Blyman told Bradshaw to fabricate her testimony and tell the jury there had been a struggle between Urbano and her and that Blyman was trying to save her.

At trial Bradshaw testified that on June 20, 2009, she dressed like a prostitute and walked up and down the street as part of Blyman's and her plan to rob somebody. Urbano stopped and propositioned her for sex. Bradshaw got in Urbano's truck and they drove down the alley and parked behind a store. Following their plan, Blyman approached the truck, robbed Urbano at gunpoint, and shot him in the knee.

Blyman also testified at trial. He admitted that in May 2008 he was convicted of felony assault. In June 2009, he was on probation. Blyman stated he was in a romantic relationship with Bradshaw, but conceded he had been cheating on her. He claimed that on June 20, 2009, he was carrying a gun for protection, even though he knew he was not allowed to carry a gun. He was not looking to rob anyone.

As Blyman walked by the alley, he saw two people fighting and heard Bradshaw's voice say, "Get off of me." Blyman ran down the alley and "grabbed the dude." The two men struggled for the gun and it went off accidentally. Blyman did not take the man's money and never threatened him.

Blyman claimed he lied in his original statements to police when he admitted taking Urbano's money. He lied to protect Bradshaw. He did admit he tried evading police and, when officers came to arrest him, he tried to run away.

On November 16, 2011, the jury convicted Blyman of all three counts: count 1, robbery, count 2, assault with a firearm, and count 3, criminal threats. The jury also found true that Blyman used and discharged a firearm in count 1, used a firearm in counts 2 and 3, and inflicted great bodily injury in count 2.

The trial court sentenced Blyman to a total term of 30 years to life in prison.

## DISCUSSION

### I. Exclusion of Videotapes

Admittedly, Bradshaw told several different stories to police about the events. First, she claimed Urbano was giving her a ride home when two unknown men approached and committed the robbery. Next, Bradshaw claimed that a man named Kenyon Muhammad committed the robbery. In both these stories, she maintained that neither she nor Blyman was involved. Later, Bradshaw told police that she posed as a prostitute while Muhammad and Blyman committed the robbery. Finally, Bradshaw admitted that she posed as a prostitute to lure a victim and that Blyman committed the robbery; no one else was involved.

Bradshaw testified to this final version of events at trial, which she claimed was the truth. Defense counsel then thoroughly cross-examined Bradshaw on her inconsistent pretrial statements. Bradshaw, under questioning, repeatedly admitted lying to police in her initial statements. Defense counsel also cross-examined the police officer who took Bradshaw's multiple inconsistent statements. When defense counsel requested to play for the jury the videotapes of Bradshaw's multiple statements to police, the trial court denied the request.

Blyman contends the ruling denying his request to play the videotapes was prejudicial error. We disagree. "On appeal, an Evidence Code section 352 ruling is subject to the deferential abuse of discretion standard of review. [Citation.] Only if the record shows an exercise of discretion in an arbitrary, capricious, or patently absurd manner that caused a manifest miscarriage of justice will an Evidence Code section 352 ruling be overturned. [Citation.]" (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1081 (*Ybarra*).)

4.

Here, the trial court conducted an Evidence Code section 352[1] analysis before ruling. The trial court noted that defense counsel had been given "free reign" in examining Bradshaw about the details of each of her statements to police; the police officer who took the statements had been cross-examined regarding the statements; Bradshaw had admitted lying to police officers three times; and Bradshaw acknowledged that the story she told the fourth time she was interviewed resulted in her plea agreement. The trial court opined that the probative value of having the jury view two to four hours of videotaped statements by Bradshaw was minimal in light of the lengthy testimony on the subject and that showing the videotapes would be an undue consumption of time. The trial court allowed the defense to recall any witnesses if it felt the need for further cross-examination on the subject.

The trial court's decision was reasonable and fell well within the trial court's wide discretion under section 352. There was nothing arbitrary or capricious about the ruling. (*Ybarra, supra,* 166 Cal.App.4th at p. 1081.)

The trial court considered and rejected Blyman's argument that he be allowed to show excerpts of the videotapes and that these excerpts would not consume an undue amount of time. As the trial court noted, if Blyman was allowed to show selected excerpts, the prosecution had stated its intention to show the rest of the interviews, as allowed by section 356. Thus, the undue consumption of time would have resulted from showing any portion of the videotapes.

Blyman's claim that the ruling violated his right to present a defense and the confrontation clause also fails. There was no violation of the confrontation clause. Bradshaw and the police officer both testified and were cross-examined at length. The jury had an opportunity to hear their testimony, observe their demeanor, and weigh their credibility. (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.) "'Within the

---

[1]All further statutory references are to the Evidence Code unless otherwise stated.

confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance.'" (*People v. Ayala* (2000) 23 Cal.4th 225, 301.)

As a general rule, ""'the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense."'" (*People v. Lawley* (2002) 27 Cal.4th 102, 155.) That is so here. The basic rules of evidence do not violate a defendant's constitutional right to present a defense. (*People v. Phillips* (2000) 22 Cal.4th 226, 238.) The trial court did not abuse its discretion in finding that the consumption of time was not justified by the marginal probative value of the proffered evidence. The marginal probative value of the videotapes does not place their exclusion outside the general rule. (*People v. Hawthorne* (1992) 4 Cal.4th 43, 56-58.)

## II. Unanimity Instruction

Blyman contends the evidence established two discrete acts that could have formed the basis of the Penal Code section 422 criminal threats conviction and therefore the trial court had a sua sponte duty to instruct the jury with a unanimity instruction. He claims failure to so instruct the jury was prejudicial error, requiring reversal of the conviction. The People maintain an election was made by the prosecutor in closing argument; therefore, no unanimity instruction was required. The People are correct.

Where multiple acts could constitute a terrorist threat, it is error for the trial court to fail to give the unanimity instruction. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) The alternative to giving the jury a unanimity instruction, however, is for the prosecution to elect a single act for each charge. (*People v. Diaz* (1987) 195 Cal.App.3d 1375, 1381 (*Diaz*).) Furthermore, no unanimity instruction is required where a defendant's acts constitute a single continuous course of conduct—"whose acts were so closely connected in time as to form part of one transaction. [Citations.]" (*People v. Maury* (2003) 30 Cal.4th 342, 423.)

6.

In *People v. Russo* (2001) 25 Cal.4th 1124, the California Supreme Court explained that "In a criminal case, a jury verdict must be unanimous. [Citations.] … Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Id*. at p. 1132.)

In *People v. Beardslee* (1991) 53 Cal.3d 68, the court stated that "'A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged.' [Citations.]" (*Id*. at p. 93.)

Assuming for purposes of argument the two comments made by Blyman were discrete offenses, the People made an election during closing argument as to which remark was the basis of the charge. The prosecutor stated the criminal threats charge was for Blyman "threatening Mr. Urbano when he's taking his money saying he's going to blow his head off." This second threat occurred in the alley when Blyman took Urbano's money; the other threat occurred earlier, immediately after Urbano stepped away from the ATM machine and while Urbano and Blyman were in the parking lot.

The prosecutor also stated, "Urbano even told it to you in English. You heard him say it on the stand. No doubt about the words that were used there." Urbano testified through a translator. Only the second threat made in the alley was repeated by Urbano in English. Finally, the prosecutor stated in closing that Blyman told Urbano "he's going to blow his head off and he's actually got the gun pointed at his head." Only during the second threat in the alley was the gun pointed at Urbano's head.

Because of the prosecutor's election of the act upon which a conviction must be based, we conclude that a more specific unanimity instruction was not necessary. (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292 (*Jantz*).) Based upon this election, we conclude the trial court did not have a sua sponte duty to give a unanimity instruction.

7.

(*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455; *Diaz, supra,* 195 Cal.App.3d at p. 1383 (*Diaz*).)

Moreover, while we believe such an election was understood in this case, we also note that the evidence established all of Blyman's acts were part of a continuous course of conduct occurring within a short period of time. The jury found Blyman guilty of all charged offenses and enhancements pertaining to this course of conduct. We conclude that if there was any lack of clarity that triggered a duty to instruct, the failure to give the unanimity instruction was harmless beyond a reasonable doubt. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199; *Jantz, supra,* 137 Cal.App.4th at p. 1293.)

The threats were similar and relatively contemporaneous in time. The jury credited Urbano's testimony about the series of events as reflected in its verdicts. There is no rational basis for concluding the jury would credit Urbano's testimony regarding the threat in the alley, but not credit Urbano's testimony regarding the threat in the parking lot. This, plus the prosecutor's argument, if not a clear election, certainly came close, and in combination reflects that any failure to give a unanimity instruction was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.

_____

CORNELL, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

FRANSON, J.

8.