Filed 4/17/14  P. v. Jaquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID GARY JAQUEZ,<br><br>Defendant and Appellant. | F065916<br><br>(Super. Ct. No. MCR042348)<br><br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Madera County.  David D. Minier, Judge.  (Retired Judge of the Madera Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Susan D. Shors, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Franson, Acting P.J., Peña, J. and LaPorte, J.[†]

†        Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

On June 25, 2012, appellant, David Gary Jaquez, was charged in an information with a count of oral copulation of a child 10 years old or younger by a person 18 years or older (Pen. Code, § 288.7, subd. (b), count 1),[1] a count of digital penetration of a child 10 years old or younger by a person 18 years or older (§ 288.7, subd. (b), count 2), a count of lewd and lascivious conduct on a child 14 years old or younger by sucking on the victim's breast (§ 288, subd. (a), count 3), and a count of lewd and lascivious conduct on a child 14 years old or younger by kissing the victim's neck and "moving up and down on her" (§ 288, subd. (a), count 4).[2]  At the conclusion of a jury trial on August 29, 2012, appellant was convicted of all four counts.

On October 3, 2012, the trial court sentenced appellant to two consecutive indeterminate terms of 15 years to life on counts 1 and 2, a consecutive determinate term of eight years on count 3, and a consecutive determinate term of two years on count 4. Appellant was ordered to pay a restitution fine of $240 as well as other fines and fees. The court granted appellant 317 days of credits for time served in jail prior to sentencing, 47 days of conduct credits, and total custody credits of 364 days.  Appellant filed a notice of appeal on October 5, 2012.

Appellate counsel has filed a brief seeking independent review of the case by this court pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

## FACTS

When she testified at trial, Jane Doe was just beginning the fifth grade and had turned 11 years old in April 2012.[3]  Jane identified appellant as her grandmother's ex-

---

[1]     Unless otherwise designated, all statutory references are to the Penal Code.

[2]     A criminal complaint with only two counts was filed on November 28, 2011.

[3]     Pursuant to section 293.5, subdivision (b), the victim was referred throughout the proceedings as Jane Doe.  The jury was instructed pursuant to section 293.5,

2

boyfriend who had lived in her house for years. Appellant was born in 1953 and was 59 years old at the time of trial.

## Count 1

Jane testified that the first incident occurred when she went with appellant in his pickup truck to pick up his mother's mail. On the way back, appellant stopped his truck in a field. Jane asked appellant for candy because he gave it to her often. Appellant told Jane that if he gave her candy, he would have to touch her. The truck had a bench seat. Appellant told Jane's to pull her shorts down. Jane's head was by the passenger door, her feet were by the radio. Appellant put his head down and licked Jane's "middle part," the place from which she urinated. Appellant did this for five minutes and gave Jane some beef jerky.

A sheriff's deputy then drove up. Appellant told Jane the cops were coming, to pull up her shorts, and to pretend she was asleep. Appellant told the deputy they were there just so Jane could sleep for a little while. The deputy told appellant to leave.

Deputy Andrew Rodriguez of the Madera County Sheriff's Department testified that on February 21, 2009, he was driving down Avenue 21 and looked south where he saw a truck parked 30 to 50 feet off the road in an orchard. Rodriguez contacted appellant. Rodriguez asked appellant what he was doing. Jane was lying down next to appellant on the passenger seat. The situation did not "sit right" with Rodriguez who called dispatch to see if there were any wants or warrants for appellant. The dispatcher told Rodriguez appellant and his vehicle were clear.

---

subdivision (b) and CALCRIM No. 123 that the victim was being identified as Jane Doe only to protect her privacy.

3

Rodriguez later learned of the investigation in the instant action from Detective Zamudio. Rodriguez ran appellant's information through the computer and found he had encountered appellant in 2009.

*Count 2*

Jane explained that appellant touched the middle part of her body with his mouth and hands. Appellant molested Jane frequently. Jane asked appellant for a piece of candy and appellant told her that she would have to do something. Appellant put his hand on her and moved it around her middle part, placing his finger inside her body and moving it up and down. Appellant then gave Jane candy. When appellant placed his hand inside Jane, her middle part tickled.

*Count 3*

The night before Jane reported that she was being abused by appellant, Jane went to appellant's bedroom to get some candy. Appellant told Jane she would have to do something. Jane laid down and appellant licked her breast, her middle part, and her butt.

*Count 4*

On another occasion, appellant had Jane facing the bed while he remained behind her. Appellant put Jane's hands on the bed, got close to her, and rubbed his middle part against her butt. Appellant's middle part felt hard and he placed a lot of pressure on Jane moving up and down. This lasted for 10 minutes. Appellant also pulled Jane's hair back and licked her neck. Jane explained that appellant was leaning against her. At the beginning of his conduct, appellant's middle part felt soft, later it felt hard.

*Other Evidence*

When appellant's sexual conduct began, Jane was seven years old and she did not understand that it was wrong. By the time Jane was nine or ten years old, she understood it was wrong.

4

Jane explained that appellant kept a lot of candy in his room and he sometimes gave her candy for doing chores. Jane and her cousins sometimes went into appellant's room to steal candy.

One or two weeks before Jane reported anything, she was lying on appellant's bed with him watching television. Appellant told Jane to turn around. Jane could feel appellant scoot his body up to her. She could feel appellant's stomach. Appellant told her to pull down her pants and she heard appellant open his zipper. Jane jumped off the bed because she was afraid he was going to stick his middle part in her buttocks. Appellant told Jane to get out.

Jane reported appellant's abuse to a yard duty lady at school, who took Jane to the school principal. Jane then talked to investigators. Appellant never touched Jane again. During direct examination, Jane identified photographs taken of her home, appellant's bedroom, a sign "candy connection" appellant displayed in his bedroom, and candy that appellant kept in his bedroom. The photographs were taken in November 2011.

Jane's grandmother, Sylvia M., testified that she lived in the basement with appellant until May 2010 before moving into another room. Sylvia M. testified that she never saw anything unusual occur between the children and appellant. According to Sylvia M., appellant was impotent and unable to have an erection the entire time she knew him.

Appellant was arrested late in 2011. Prior to his arrest, Sylvia M. was contacted by Detective Mark Trukki. Sylvia M. agreed to call appellant. Trukki recorded the telephone conversation. Sylvia M. listened to the recording of the conversation prior to her testimony and described the conversation as accurate. The audio recording was played for the jury.

During the conversation, appellant said he played around with Jane, but did not do anything to her. When Sylvia M. asked appellant why he gave Jane candy and touched

5

her, he replied that he did not know.  When Sylvia asked appellant if he had done this before, he replied, "No."  When she asked if this was his first time, appellant replied, "Yes."  Appellant admitted that he did not feel good about himself.  Appellant denied this had been going on for years.

When he was asked whether he touched Jane with more than just his finger and his tongue, appellant said, "no."  Sylvia M. asked if this all began about the time her daughter passed away.  Appellant replied, "I guess about then," about the time Sylvia M. stopped sleeping downstairs.  Appellant did not know how many times he touched Jane and told Sylvia M. that he was not supposed to talk to her.

Appellant told Sylvia M. that they were going to send him to prison, he felt bad for what he had done, he felt bad for what Sylvia M. was going through, and he felt bad for everyone.  Appellant said he was not going to make Jane go to court.  When Sylvia M. asked if he only used his fingers and his tongue on Jane, appellant replied, "Nothing else…. I promise!"  Appellant swore that he never made Jane touch him.

Detective Trukki testified that Jane was given a physical examination.  The results of the examination were inconclusive and failed to show either that Jane had been molested or that she had not been molested.

### Jury Instructions for Lesser Included Offenses, Unanimity, and Uncharged Acts

The jury was instructed on the elements of each offense.  The jury was also instructed on the lesser included offenses for each allegation of an attempted offense (CALCRIM No. 460), battery (CALCRIM No. 960), and simple assault (CALCRIM No. 915).  The jury was instructed as to how to complete the verdict forms when lesser included offenses are not separately charged (CALCRIM No. 3517).  The jury received limited instructions on how it could consider evidence of uncharged sex offenses (CALCRIM Nos. 303 & 1191).

6

Although there was a brief discussion outside the presence of the jury concerning giving a unanimity instruction pursuant to CALCRIM No. 3500, the jury did not receive a unanimity instruction. Following the allegations in the information, however, the prosecutor elected specific acts testified to by the victim for each count.[4] The prosecutor's election of acts for each count during closing argument to the jury closely followed the allegations in the information.

## APPELLATE COURT REVIEW

Appellant's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*Wende*, *supra*, 25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on May 10, 2013, we invited appellant to submit additional briefing. To date, he has not done so.

After independent review of the record, we have concluded there are no reasonably arguable legal or factual issues.

## DISPOSITION

The judgment is affirmed.

---

[4] An alternative to giving the jury a unanimity instruction is for the prosecution to elect a single act for each charge. (*People v. Diaz* (1987) 195 Cal.App.3d 1375, 1381.) Because the prosecutor made an election of the act upon which a conviction for each of the four counts must be based, we find that a more specific unanimity instruction was not necessary. (*Ibid.*; also see *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292.) Based upon the prosecutor's election, we further find the trial court did not have a sua sponte duty to give a unanimity instruction.