Filed 11/10/22  P. v. Burge CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>DAVID MICHAEL BURGE,<br><br>　　Defendant and Appellant. | H049003<br>(Monterey County<br>　Super. Ct. Nos. 19CR011780,<br>　19CR011849, 20CR005207,<br>20CR008469) |

Defendant David Michael Burge was convicted by a jury of corporal injury to a cohabitant or former cohabitant (Pen. Code, § 273.5, subd. (a);[1] count 1), two counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); counts 2 & 3), and criminal threats (§ 422, subd. (a); count 4).  The court also found that he had violated his probation in three prior cases by committing these offenses, and it sentenced him for those cases at the same time that it sentenced him for these offenses.  Defendant was sentenced to a total of eight years, eight months in state prison.

On appeal, defendant contends that the trial court prejudicially erred in failing to give a unanimity instruction as to counts 1, 2, and 3.  He claims that there were more than three acts that could have formed the bases for these counts.  We requested supplemental briefing on multiple sentencing issues and asked whether a remand for resentencing was

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

required. Defendant contends that a remand is required, and he also asserts that the trial court incorrectly calculated his custody credit for one of the prior cases. He argues that he is entitled to one additional day of credit. The Attorney General concedes that defendant is entitled to one additional day of custody credit and that a remand for resentencing is required. We conclude that the trial court did not prejudicially err in failing to give a unanimity instruction. However, we agree with the parties that a remand for resentencing is required, and we reverse the judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Jane Doe dated for a month and a half in the summer of 2020, and Jane lived with defendant at his father's home for three weeks. While Jane was living with defendant in August 2020, he assaulted her. She was in the kitchen using a small knife when defendant suddenly yelled, " 'You were about to stab me,' " forced her to the ground by the neck, and carried her out of the house, hitting her head against various objects as they went. He threw her out the front door onto the concrete, injuring her hip. A passerby saw defendant screaming at Jane, dragging her to the door, and kicking her, and she saw Jane lying motionless on the ground. The passerby asked neighbors to call the police. When the police arrived, Jane, who had managed to stand up, told the police that she was fine.

The relationship between Jane and defendant ended in early September 2020. In October 2020, Jane was homeless and staying in a hotel room in Monterey that her mother had rented for her. Defendant told her that he was receiving medical treatment for an injury and needed a place to stay, so she invited him to stay with her in her hotel room. He arrived at her hotel room on the evening of October 5 and stayed for the next two days.[2]

---

[2] The information charged that count 1 (corporal injury) and count 2 (aggravated assault) occurred "[o]n or about" October 7 and that count 3 (aggravated assault) and (continued)

2

On the afternoon of October 6, 2020, Jane and defendant got into an argument about a frozen blueberry muffin. Defendant asked her to heat up the muffin for him, but she told him to do it himself. He responded by "straddling" her as she was lying on the bed and "smash[ing] [the frozen muffin] into my skull." The muffin was crushed into the side of her face and her mouth, which caused "an aching dull sensation" in Jane's head. Jane began "yelling in fear."

Defendant got up and put the muffin in the microwave to heat it up. He then got "upset" because the muffin got "overheated," which he blamed on Jane. He threw the muffin at Jane, and it hit her hip. Jane went into the bathroom to escape him and then came out and told him to leave. She opened the hotel room's door and told him he needed to leave, but he slammed the door and refused to leave. Seconds later, defendant punched her in the eye, which caused her glasses to hit her face.

After defendant punched her, Jane ran out of the room, went to the hotel's basement, and called her mother for help. Her mother wanted to talk to defendant so Jane returned to the hotel room, where Jane found that defendant had locked himself in the bathroom. Defendant would not listen to her, and he told her "if I called the cops that he would kill me." Defendant said "he would be going to jail for a while and when he was out he would come and kill me." Jane was still on the phone with her mother when defendant made these threats, and her mother, who was on speakerphone, "yelled on the phone, No one's going to call the cops, David. You just need to leave the room immediately."[3] Jane also told defendant to leave. Defendant became "calm" and said he would be " 'nice.' " He remained calm throughout the remainder of that day.

_____

count 4 (criminal threats) occurred "[o]n or about" October 5, 2020. However, all of the trial testimony indisputably established that no offenses occurred on October *5*; all of the offenses occurred on October *6* and October 7. Defendant did not arrive at Jane's hotel room until 11:00 p.m. on October 5, and Jane testified that they had no arguments that night.

[3] Jane's mother testified at trial that she heard defendant make the first threat.

At 5:30 a.m. on October 7, 2020, Jane awakened to find defendant "[p]acing around the room, saying that he needed a cheeseburger and that I had eaten his." Jane had eaten a couple of bites of a cheeseburger that defendant had put in the refrigerator the previous night to save so he could eat it with his medication. Defendant yelled at her and then swept everything on the bedside table onto her body as she was lying in the bed, including an alcoholic drink. The alcoholic drink went into Jane's eyes, which stung and made her unable to see. Defendant turned on the lights, threw Jane's glasses onto her, and told her to get up and get him a cheeseburger. He tried to pull her out of the bed by tugging on her leg. Jane fought him off, and he started walking around the room grabbing his things.

Defendant continued to yell at Jane to get up and get him a cheeseburger. Jane told him there was nowhere open to get a cheeseburger and offered him some saltines. He refused the saltines and insisted that she get him a cheeseburger. Jane was looking around for her things, and she noticed that her Kindle was missing. She asked defendant where it was, and he pulled it out from behind the microwave but would not give it to her. Jane thought he put her Kindle in his bag, so she "swatted" his bag onto the floor.

Defendant responded by punching Jane with a closed fist, connecting with the bridge of her nose, cutting her nose and knocking her glasses off. He threw her onto the bed, sat on top of her, and started strangling her. Jane tried to push him off, but "[h]e put all of his body weight down into my neck with his arms" and squeezed her neck for 15 to 30 seconds. Jane "started blacking out" and stopped resisting. When she awakened, defendant was no longer on top of her.

Defendant was gathering his things, and Jane tried to find her glasses on the floor. While she was on the floor looking for her glasses, defendant knelt down and punched her in the eye.[4] This punch caused bruising. Jane started screaming as loud as she could

---

[4] Jane's glasses were broken in this altercation.

4

and telling defendant to leave. He said he would leave if she gave him a cheeseburger. Then he threw her on the bed again, got on top of her, and began strangling her again, this time with a "choke-hold." He told her: " 'You're really going to pass out now.' " He maintained the chokehold for 30 seconds, and Jane lost consciousness.

When Jane awakened, she was unable to move, and she saw that defendant was again gathering his things. After 30 seconds, she was able to move, and she got up, began screaming again, and determined that her Kindle must be in defendant's bag. He said he would give her the Kindle if she gave him $10 for a cheeseburger. She gave him some money, and he gave her the Kindle and left. At that point, it was 5:45 a.m. All of the events that had occurred that morning happened in a 15-minute period.

Once he had left, Jane realized that her hand was bleeding. She tried to rest on the bed for several hours, but defendant kept banging on the door and at one point tried to get her to open the door by pretending to be the maid.[5] Jane did not feel safe so she called her mother. Her mother arrived 15 minutes later and saw defendant outside the hotel room. Jane's mother confronted defendant, but he denied hitting Jane. Jane's mother went to Jane's hotel room, observed marks on Jane's neck, and called the police. The police arrived ten minutes later.

Monterey Police Officer Lee Doyle spoke to Jane's mother and Jane at the hotel. Jane was "in obvious discomfort, wincing," crying, and having difficulty speaking, with a "raspy voice." Doyle observed redness on both sides of Jane's neck and swelling on her forehead. He spoke with Jane for only five minutes because she needed medical attention. Jane was taken to the hospital by ambulance. Doyle spoke with Jane for about 45 minutes to an hour at the hospital an hour later. At the hospital, he noticed a cut on her hand and bruising on her leg. Doyle noted that Jane "was in obvious pain." Jane

---

[5] Surveillance video showed defendant coming to the door of Jane's hotel room four or five times during this period.

suffered lasting nerve damage in her hand from the compression of the nerves in her neck and continuing pain in her shoulder near her neck.

## II.   DISCUSSION

### A.   Lack of Unanimity Instruction

#### 1.   Background

Neither the prosecution nor the defense requested a unanimity instruction, and the trial court did not give one.

The jury was instructed on count 1 (the corporal injury count) that the prosecution had to prove that defendant "willfully inflicted a physical injury" on Jane and that "the injury inflicted by the defendant resulted in a traumatic condition."  The jury was told: "A traumatic condition is a wound or other bodily injury, whether minor or serious, caused by the direct application of physical force."

The jury was instructed that counts 2 and 3 (the aggravated assault counts) required the prosecution to prove that defendant "willfully" "did an act that, by its nature, would directly and probably result in the application of force to a person" and "the force used was likely to produce great bodily injury."  "Great bodily injury" was defined for the jury as "significant or substantial physical injury," "an injury that is greater than minor or moderate harm."

The prosecutor's argument to the jury addressed the counts chronologically.  First, she argued to the jury that defendant committed count 3 (one of the aggravated assault counts) during the incident on the afternoon of October 6, 2020 when defendant pushed the frozen muffin into Jane's face and then punched her.[6]  The prosecutor was very clear that she was premising count 3 on this punch.  She told the jury:  "[D]efendant is charged with assault with force likely to produce great bodily injury as against Jane Doe *for*

---

[6] Although the jury was never instructed to associate specific dates with specific counts, the prosecutor's argument concerning the October 6 punch corresponded to the information's designation of count 3.

6

*punching her* during that incident, causing injury." (Italics added.) The prosecutor emphasized that Jane was "struck in the face with a closed fist" during this October 6 incident. She told the jury: "That was just the first of a number of punches." The prosecutor proceeded to address count 4 (the criminal threats count), which had also occurred on October 6.

After addressing count 4, the prosecutor proceeded to "what happened on the 7th." The prosecutor described the argument over the cheeseburger and how it led to "two additional punches to [Jane's] face, one to her nose and one to the side of her face" and "the three [*sic*] times that the defendant strangled her."

The prosecutor expressly based count 1 (the corporal injury count) on the totality of all of Jane's injuries. "You have photographs of bruising to Jane Doe's face caused by punching, redness, and marks to her neck caused by being strangled more than once, a laceration to her middle finger that she received at some point during the struggle. Those, ladies and gentlemen, are traumatic conditions. Those are injuries." The prosecutor did not explicitly identify the factual basis for count 2 (the October 7 aggravated assault count).

The defense, which had presented no evidence at trial, made a very brief closing argument that did not attack Jane's testimony with respect to counts 1, 2, and 3. The defense challenged only count 4.

### 2.    Analysis

Defendant contends that a unanimity instruction was required as to counts 1, 2, and 3 because there were six acts that could have formed the basis for any of those three counts. He identifies two acts on October 6, the punch and the muffin smashing, and four acts on October 7, two punches and two strangulations.

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the

7

information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty.  [Citation.]  There are, however, several exceptions to this rule.  For example, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct or a series of acts over a period of time' [citation].  There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime.  [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings*).)

Defendant insists that this is not a case in which the continuous course of conduct exception applies because some of the six acts took place on different days, the acts were "distinct in time and circumstances" and "separated by intervening events," and "the acts offered different defenses."  The Attorney General argues that no unanimity instruction was required because the corporal injury count charged a "course of conduct, not a discrete act," the prosecutor elected the specific bases for the assault counts, defendant did not offer different defenses to the different acts, and there was no basis for the jury to have distinguished between the acts.  Defendant responds that the corporal injury count did not charge a course of conduct, and he insists that the prosecutor did not make clear to the jury the specific acts on which the individual assault counts were based.

Defendant's claims are not supported by the record.  First, the prosecutor clearly elected the specific act that she was relying on as the basis for the first of the two assault counts (count 3).  She told the jury:  "[D]efendant is charged with assault with force likely to produce great bodily injury as against Jane Doe *for punching her* during that [October 6] incident, causing injury." (Italics added.)  "The alternative to giving the jury a unanimity instruction is for the prosecution to elect a single act for each charge." (*People v. Diaz* (1987) 195 Cal.App.3d 1375, 1381.)  When a prosecutor clearly informs the jury in argument of the specific act that she is relying on to prove a specific count, no

unanimity instruction is required as to that count. (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292.) Here, the prosecutor made a clear election as to count 3, so no unanimity instruction was required as to that count.

Second, no unanimity instruction was required as to count 1, the corporal injury count, because the prosecutor expressly elected to proceed on a course of conduct theory as to that count. The prosecutor clearly informed the jury that the injuries she was relying on to prove the "traumatic condition" element of count 1 were "bruising to Jane Doe's face caused by punching, redness, and marks to her neck caused by being strangled more than once, [and] a laceration to her middle finger . . . ." Thus, she sought a conviction on count 1 based on *the entirety* of defendant's injury-causing acts on Jane on October 7. Under these circumstances, no unanimity instruction was required as to count 1. (*Jennings*, *supra*, 50 Cal.4th at p. 680 [no unanimity instruction required where prosecutor proceeded on a course of conduct theory that relied on the cumulative effect of multiple acts over a four-month period to prove torture].)

Third, no unanimity instruction was required as to count 2, the October 7 assault count, because " 'the acts [on October 7] are so closely connected in time as to form part of one transaction,' " and defendant did not offer different defenses to the individual assaultive acts on October 7. (*Jennings*, *supra*, 50 Cal.4th at p. 679; accord *People v. Stankewitz* (1990) 51 Cal.3d 72, 100.) "This branch of the 'continuous conduct' exception [citation] applies if the defendant tenders the same defense or defenses to each act and if there is no reasonable basis for the jury to distinguish between them. [Citations.]" (*People v. Crandell* (1988) 46 Cal.3d 833, 875, disapproved on a different point in *People v. Crayton* (2002) 28 Cal.4th 346, 364; see also *People v. Datt* (2010) 185 Cal.App.4th 942, 951 [multiple acts during 18-minute period were part of same transaction].) " '[W]here the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the instruction

9

is not necessary to the jury's understanding of the case.' [Citations.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 93.)

Here, all of the punching and strangling that defendant inflicted on Jane on October 7 occurred during a discrete 15-minute period on or near the bed in Jane's hotel room. Defendant offered no defense to any of these acts, and there was no reasonable basis for the jury to distinguish between them, particularly since defendant did not attack Jane's credibility at trial. It follows that no unanimity instruction was required as to count 2.

Since no unanimity instruction was required as to counts 1, 2, or 3, we reject defendant's claim that the trial court prejudicially erred in failing to give a unanimity instruction.

## B.     Sentencing Issues

We requested supplemental briefing on whether a remand for resentencing is required due to Senate Bill No. 567, which took effect after defendant was sentenced. Defendant contends that a remand is required. We also requested supplemental briefing on whether a remand for resentencing is required because the trial court imposed a term for an enhancement in one of defendant's prior cases that had been dismissed. The parties agree that a remand is required for the latter reason. In addition, defendant contends, and the Attorney General concedes, that he is entitled to one additional day of custody credit in his prior 2017 case for a brief period of time he spent in the Calaveras County jail in early 2020, before he committed the 2020 offenses against Jane.

### 1.     Background

The prosecutor sought a six-year term for defendant's 2020 offenses, consisting of the three-year middle term for count 1 (the corporal injury count) and one-year consecutive terms for each of the other three counts. She also sought consecutive terms for the three prior cases.

10

The trial court noted, in denying probation, that defendant had 12 prior felony convictions, three of which were for failure to appear.[7] It selected the four-year upper term for count 1 for three reasons: (1) defendant had "been convicted of other crimes for which a consecutive sentence could be imposed, but for which the Court does intend to impose a concurrent sentence" (Cal. Rules of Court, rule 4.421(a)(7)),[8] which the court identified as a count that it was going to impose concurrently in the 2016 case and an enhancement that it was going to strike in the 2016 case; (2) defendant's prior convictions were numerous and of increasing seriousness (rule 4.421(b)(2)); and (3) he was on probation for the 2015, 2016, and 2017 cases when he committed the 2020 offenses (rule 4.421(b)(4)).

The trial court also imposed the four-year upper term for count 2, but it stayed that term under section 654. The court's two reasons for imposing the upper term for count 2 were: (1) defendant's prior performance on probation was "extremely unsatisfactory" (rule 4.421(b)(5)); and (2) defendant took advantage of a position of trust to commit the offense (rule 4.421(a)(11)).

The court imposed a one-year consecutive term for count 3 because it had occurred on "a separate day" (from counts 1 & 2), was "independent" of the other offenses, and involved a separate act of violence, and defendant had been convicted of other counts for which terms could have been imposed consecutively but were imposed concurrently. The court imposed a concurrent middle term for count 4, the criminal

---

[7] The only information about defendant's criminal history is what is included in the probation report. With the exception of the 2015, 2016, and 2017 cases that were sentenced with the 2020 case, defendant's only prior felony convictions were three narcotics convictions in 2010. In the 2015 case, defendant pleaded to six felonies, but two of them were marijuana offenses that later became misdemeanors. The 2016 and 2017 cases consisted of four counts of failure to appear. Hence, defendant's prior (to 2020) felony convictions consisted of eight narcotics convictions and four failure to appear convictions, for a total of 12 prior felony convictions.

[8] All further rule references are to the California Rules of Court.

threats count. The aggregate sentence in the 2020 case was five years in prison. Defendant received custody credit in the 2020 case for time served in the Monterey County jail from October 2020 to April 2021.

Defendant's 2015, 2016, and 2017 cases were also sentenced at the same hearing as the 2020 case.

The 2015 case (case No. 19CR011780) was transferred to Monterey County from Tuolumne County. In September 2015, defendant had offered to sell LSD and psilocybin mushrooms to multiple individuals at the Strawberry Music Festival, and he was then found in possession of 62 doses of LSD and 7.5 grams of psilocybin mushrooms. He was convicted by plea of two counts of transportation or sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) and two counts of possession of a controlled substance for sale (Health & Saf. Code, § 11378).[9] The court imposed a consecutive one-year (one-third of the middle term) term for one of the transportation counts and concurrent middle terms for the remaining three counts.[10]

The 2016 case (case No. 19CR011849) was also transferred to Monterey County from Tuolumne County. It arose from defendant's failure to appear twice (in May and July 2016) in the 2015 case. He pleaded guilty to two counts of failure to appear (§ 1320.5) and admitted an on-bail (§ 12022.1) enhancement as to each count. The court

---

[9] The record does not include a transcript of defendant's pleas in the 2015 case. The record does reflect that defendant was also convicted of marijuana offenses arising from the same incident, but those offenses were no longer felonies by the time of defendant's 2021 sentencing. The Tuolumne County transfer-out order for the 2015 case identified six counts: two transportation counts, two possession for sale counts, and two marijuana counts. The Monterey County transfer-in order for the 2015 case mentioned only three offenses: two transportation counts and one possession for sale count.

[10] Although the reporter's transcript of the court's oral pronouncements at the sentencing hearing reflects the imposition of three concurrent terms, the abstract of judgment and the minute order do not reflect the court's imposition of two of these three concurrent terms.

12

imposed a two-year concurrent middle term for a failure to appear (§ 1320.5) count and struck the on-bail enhancement under section 1385.[11]

The 2017 case (case No. 20CR005207) was transferred to Monterey County from Calaveras County. It arose from defendant's failure to appear twice (in April and June of 2017).[12] The court imposed a consecutive term of eight months (one-third of the middle term) for one of the two failure to appear (§ 1320.5) counts and also imposed a two-year on-bail (§ 12022.1) enhancement term. However, defendant had not admitted an on-bail enhancement allegation in the 2017 case, as the charged enhancement allegation was dismissed as part of his plea.[13] The total aggregate term for all four cases was eight years, eight months.

The court awarded defendant custody credit in the 2017 case for, among other periods, time he had served in the Calaveras County jail from "02/17/20" to "03/02/20," which the probation report calculated as "14" days of actual custody.

### 2. Remand For Resentencing is Required

The parties agree that we must remand this case for resentencing because the trial court imposed a two-year prison term for an enhancement that was not admitted but instead dismissed in the 2017 case. Since the trial court's reasons for the terms it imposed linked the four cases together, a full resentencing is necessarily required. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) When the court resentences defendant, it shall comply with the requirements of the amended version of section 1170 with respect to the imposition of any upper or middle terms. The court shall also correct defendant's

---

[11] The court made no mention of the second failure to appear count or its enhancement in the 2016 case, which were not mentioned in the probation report.

[12] Although the record is not entirely clear, the underlying offense for which defendant failed to appear in the 2017 case was apparently bringing marijuana into a jail. The probation report does not mention a conviction for that offense.

[13] The court did not mention the second count, and it is not mentioned in the minute order or on the abstract of judgment.

13

custody credit for the 2017 case. Defendant accurately contends, and the Attorney General agrees, that the period from "02/17/20" to "3/02/20" is a period of *15 days* because February 2020 had 29 days as 2020 was a leap year. Thus, defendant was entitled to 15 days, not 14 days, of actual custody credit for that period in the 2017 case.

## III.    DISPOSITION

The judgment is reversed, and the matter is remanded for resentencing.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*People v. Burge*
**H049003**